HENRY C. LACKLAND, Appellant, *v.* THOMAS F. SMITH ET AL., Respondents.

January 22, 1878.

1. One cannot so tie up his real estate under a deed of trust as to secure to himself an income and protect the property from future creditors. Equity will apply the rents and profits of the land to the satisfaction of debts accruing either prior or subsequent to the execution of the conveyance.

2. A conveyance without consideration, with intent to protect the property conveyed from future creditors, is fraudulent in law as to those creditors.

3. A bill in equity framed with a double aspect is not necessarily bad. Where there is but one substantial demand, the bill is not bad because it asserts the claim in two forms.

4. Where the case is one of equity cognizance, the parties cannot demand a jury to try any issue of fact which may arise. A court of equity rightfully in possession of the cause will determine all questions arising in the cause, whether of law or of fact.

5. Where a debtor has removed from the State, the creditor may resort to equity to set aside a fraudulent conveyance before reducing his claim to a judgment at law.

6. A creditor seeking the removal of a fraudulent obstruction to levy or sale may file his bill in equity as soon as he has obtained a specific lien upon the property in question.

7. The Statute of Limitations ceases to run in favor of a debtor when he leaves the State to reside in another, and the time of his absence must be counted out. The fact that the debtor left property in the State subject to attachment will not keep the statute running.

8. An attaching creditor may file his bill to set aside a conveyance on the ground of fraud, at any time within five years of the date of his attachment suit, provided it be within ten years of the recording of the conveyance. He is not an "aggrieved party," within the meaning of the statute, until his attachment suit is commenced.

9. One is not barred from instituting a proceeding in equity to set aside a fraudulent deed by the fact that he might have sued by publication.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

MARTIN & LACKLAND, for appellant : A conveyance made with the intent to avoid the payment of debts is void ; and this intent may be proved by facts and circumstances happening prior and subsequent to the conveyance.— Bump's Fr. Conv. 321, 322, 542 ; *Larkin* v. *McMillan*, 49 Pa.

29 ; *Bowling* v. *Bishop*, 29 Beav. 417 ; *Case* v. *Phelps*, 39 N. Y. 164 ; *Pappan* v. *Butler*, 7 Bosw. 480 ; *Dick* v. *Hamilton*, Deady, 322 ; *Partridge* v. *Gupt*, Amb. 599 ; *Winchester* v. *Carter*, 12 Allen, 606 ; 97 Mass. 140 ; 102 Mass. 272. A debtor hinders and delays his creditors when he places his assets beyond the reach of process.— *Kimball* v. *Thompson*, 4 Cush. 441 ; *Borland* v. *Mayo*, 8 Ala. 104 ; *Wheldon* v. *Wilson*, 44 Me. 1. A man cannot tie up his estate so as to enjoy it exempt from the claims of his creditors.— *Young* v. *Hermans*, 66 N. Y. 374 ; *McIlvain* v. *Smith*, 42 Mo. 45 ; *Waddingham* v. *Loker*, 44 Mo. 132 ; *Hamilton* v. *Zimmerman*, 5 Sneed, 39 ; *Trip* v. *Childs*, 14 Barb. 85 ; *Patterson* v. *Campbell*, 9 Ala. 933. In such a case equity will apply the rents and profits of the estate to the payment of debts. — *Lackland* v. *Garesché*, 56 Mo. 271. Where the debtor is a non-resident, a creditor's bill in equity may be entertained before he has reduced his claim to a judgment at law. — *Anderson* v. *Bradford*, 5 J. J. Marsh. 76 ; *Scott* v. *McMillen*, 1 Litt. 302 ; *Kippen* v. *Glancy*, 2 Blackf. 356 ; *Peay* v. *Morrison*, 10 Gratt. 149 ; *Pope* v. *Solomon*, 36 Ga. 541 ; *Greenway* v. *Thomas*, 14 Ill. 271. Equity does not require a judgment where it would be unavailing. — *Pendleton* v. *Perkins*, 49 Mo. 567 ; *Beal* v. *McVicker*, 3 Mo. App. 592 ; *Luthy* v. *Woods*, 1 Mo. App. 167 ; *State Assn.* v. *Kellogg*, 52 Mo. 583. Bills in equity framed with a double aspect are not necessarily bad. — *Bennett* v. *Wade*, 2 Atk. 324, 335 ; *Strong* v. *Watson*, 11 Ala. 324 ; *Peyton* v. *Rose*, 41 Mo. 257 ; *Crawford* v. *Kisky*, 50 Ala. 590 ; *Cuyler* v. *Moreland*, 6 Paige, 273. Limitations. — *Whittelsey* v. *Roberts*, 51 Mo. 120 ; *Fike* v. *Clark*, 55 Mo. 105 ; *Scruggs* v. *Clark*, 53 Mo. 497 ; *Veuici* v. *Cademartori*, 59 Mo. 352 ; *Miller* v. *Tyler*, 61 Mo. 401 ; *Gates* v. *Andrews*, 37 N. Y. 637 ; *Jones* v. *Read*, 1 Humph. 355 ; *Blanton* v. *Whittaker*, 11 Humph. 355 ; *Hancock* v. *Hough*, 1 Mo. 678 ; *Fisher* v. *Fisher*, 43 Miss. 212.

N. HOLMES and A. J. P. GARESCHÉ, for respondents: In order that a creditor may, in equity, have an equitable trust-estate, which cannot be reached at law, applied in satisfaction of his debt, he must first establish his claim by a judgment at law. — *Neal* v. *Duke of Marlborough*, 3 Myl. & Cr. 415 ; *Merry* v. *Freeman*, 44 Mo. 518 ; *Alnut* v. *Leper*, 48 Mo. 321 ; *McIlvaine* v. *Smith*, 42 Mo. 49 ; 2 Spence's Eq. Jur. 40, 41. As plaintiff had elected to proceed upon this petition as one single count in equity, all those allegations of the petition which constituted a cause of action at law, and sought to obtain judgment or to establish an indebtedness on the notes described, should have been treated as surplusage, and the notes and other evidence offered to prove such indebtedness should have been disregarded as being inadmissible for that purpose. — *Peyton* v. *Rose*, 41 Mo. 261 ; *Bobb* v. *Woodward*, 42 Mo. 486 ; *Jones* v. *Moore*, 42 Mo. 419 ; *Gray* v. *Payne*, 43 Mo. 204 ; *Wyman* v. *Casey*, 43 Mo. 303 ; *Henderson* v. *Dickey*, 50 Mo. 165 ; *Myers* v. *Field*, 37 Mo. 434. Equity jurisdiction ; non-residents. — *Scott* v. *McMillen*, 1 Litt. 302 ; *Kepper* v. *Glaney*, 2 Blackf. 357 ; *Peay* v. *Morrison*, 10 Gratt. 149 ; *Farrar* v. *Haseldon*, 9 Rich. Eq. 331 ; 2 Wag. Stat. (1870) 1008, sec. 13 ; 2 Blackf. 357 ; 9 Rich. Eq. 331 ; *O'Brien* v. *Coulter*, 2 Blackf. 423. Limitations. — *Rogers* v. *Brown*, 61 Mo. 187 ; *Smith* v. *McCutchen*, 38 Mo. 417.

BAKEWELL, J., delivered the opinion of the court.

This is an action by a creditor for equitable relief against the estate of his debtor. The petition alleges that the debtor has created a trust upon his own estate, and is framed with a double aspect. It asks the court to sweep away the trust if it be regarded as fraudulent, or to sequestrate the rents if the trust-deed is found to be valid. On hearing, the trial court dismissed the bill, and plaintiff appeals.

The original petition was filed Nov. 11, 1872. The allega-

tions of the bill are that defendant Smith executed seven promissory notes, which are fully described, and which are owned by plaintiff. These notes are of various dates, from March 28, 1860, to Feb. 21, 1861, and mature at various periods from July 2, 1860, to Nov. 12, 1861. That on Oct. 18, 1871, judgment for $2,892.05 was rendered on these notes in a proceeding in attachment commenced by plaintiff in the St. Louis Circuit Court, in which proceeding the real estate described in this petition was attached as the property of defendant Smith. Service upon Smith in the attachment suit was by publication only, and the execution was returned unsatisfied. The petition further alleges that Smith, at the date of the attachment, and before, was seized of the real estate described in the petition, and that the same is encum-bered, embarrassed, and covered by certain conveyances in the petition described; that on Oct. 10, 1855, Smith, being seized of said real estate, free of all encumbrances, conveyed the same to Charles Gibson; that this conveyance was without consideration, and the property remained in the name of Gibson, but subject to the control of Smith, who had the beneficial enjoyment of it; the deed to Gibson was recorded Feb. 11, 1856; that afterwards, Gibson, at the instance of Smith, by deeds dated April and May, 1857, conveyed said property to Riggin, on certain trusts fully set out in the petition; that defendant Garesché was, on June 6, 1865, substituted as trustee of Smith, and has ever since remained trustee, receiving and transmitting the rents to Smith, who is a non-resident; that the net income thus received is more than $5,000 per annum; that among the trusts declared in these deeds was one in favor of Smith, of an equitable nature, and such that it could not be levied on or sold under attachment or execution, and could be reached only in equity; that the conveyances in question were made to defraud both prior and subsequent creditors of Smith, and are to his use, and void; that Smith has no other property in Missouri; and plaintiff prays that the demand proceed-

ing from said notes, and the judgment upon said demand by attachment, be adjudged a valid lien in equity upon said real estate, and the rents, issues, and profits thereof; that the conveyances be inquired into, and, if found null and void, so much of said real estate as shall be sufficient to satisfy the demand of plaintiff be divested and declared free of said trust, and be vested absolutely in said Smith, and be ordered sold for the purpose of satisfying said demand; and if said conveyances be found to be valid as against creditors, that the profits of said real estate be sequestered and held by order of court for the satisfaction and payment of said demand, and the trustee be enjoined from paying any of the rents to Smith, and be ordered to pay the same to plaintiff until satisfaction of his demand.

Defendants filed separate answers, denying all the allegations of the petition, and averring that plaintiff's cause of action did not accrue within ten years; and plaintiff replied that Smith, before the expiration of ten years, left Missouri, and has ever since resided out of the State.

At the hearing, the plaintiff claimed that his proceeding was in equity alone, and offered in evidence the notes described in the petition. To this evidence defendant objected on the ground that the issue of indebtedness was triable at law, and that defendants were entitled to a jury; and also that these allegations, being blended with a count in equity, should be rejected as surplusage. The objection was overruled. The petition and record in the attachment suit of the present plaintiff against the present defendant Smith was then introduced, against the objection of defendants. The ground of the attachment was non-residence. The suit was commenced on Feb. 20, 1871, on the notes described in the petition in the present case. The interest of Smith in the real estate described in this action was attached, and defendant Garesché was summoned as garnishee. The execution was returned unsatisfied, by order of the plaintiff's attorney, on the ground that a sale under it

would be a useless sacrifice of the property. The deed of Smith to Gibson, dated Oct. 10, 1855, was an ordinary warranty deed; the consideration named is $10,000; the deed is recorded Feb. 11, 1856. The deeds from Gibson to Riggin as trustee were also introduced. They show that Smith had no power to modify the trust. It was admitted that Garesché was substituted as trustee.

Charles Gibson testified that he paid no money to Smith for the deed to Gibson; that he caused Smith to convey the property to him for the purpose and with the intention of improving it, and when it was improved so as to create an income, to convey it, as was afterwards done, for the benefit of Smith. The deeds to Riggin were made to carry out the same scheme. The improvements were erected with Smith's funds. The Pine Street property was already improved. Witness built one house on Fifth Street, five on Gratiot, and six or eight on Eighth Street. Smith was a wild young man, and ran in debt from 1855 to 1857. Witness, whilst in possession of the property, paid off all the debts of Smith; there were a great many of them. He then settled up all his accounts with Smith, closed all business transactions with him, and turned over to him the remainder of his property, amounting to $60,000. Smith ran through it all in some months. The witness thought, after this, Smith had no other property. The witness further said that there was $60,000 of real estate not included in the trust-deeds, and never conveyed by Smith to him, and that there was no intention to defraud any existing creditors, but merely to provide against improvidence; and that Smith was, he believed, at the time of the conveyance, contemplating marriage.

Evidence was introduced tending to show the transfer to plaintiff of the notes described in the petition. Also, that defendant Smith ceased to reside in Missouri after the close of the war, in 1865, and has never resided there since. The gross income of the property in question was shown to be

from $7,000 to $10,000 per annum. And it was admitted that Garesché, trustee, had assets in his hands sufficient to pay any judgment which could be recovered in this action. There was also testimony that Smith has been married since some time in 1865, before Garesché became trustee. Plaintiff put in evidence the records of several suits against Smith in St. Louis County, from 1858 to 1864, for sums ranging from $500 to $1,000. Also several satisfied deeds of trust of Smith for various sums, amounting together to something less than $50,000, borrowed in 1855, 1856, 1857, and 1858. But none of these debts of Smith appear to have existed at the date of his conveyance to Gibson, in October, 1855. There was also evidence that at the date of the deed of Gibson to the trustee of Smith, Smith had disposed of all of his real estate, except sixteen unimproved lots in St. Louis, which he sold in July, 1858, for $19,000. Finally, plaintiff offered in evidence the agreement between Smith and Garesché, his trustee, dated Nov. 4, 1865. This agreement recites that Smith is a resident of Louisville, Kentucky, and was formerly of St. Louis, Missouri. It also recites that the trust-estate is embarrassed by reason of non-payment of taxes, and that Smith is involved in debt. It also provides that Garesché shall not be required to pay Smith more than $175 per month, except in his discretion ; that he may pay $350 to the wife of Smith during her life ; that after the present embarrassment is removed, he may pay two-thirds of the rents, issues, and profits to the parties entitled thereto ; that, after the taxes are paid, he may, in his discretion, use the surplus to compound and settle any of the debts hanging over Smith. It contains a covenant that the trustee is irremovable, except for misconduct. The trust declared in the deeds of 1857, from Gibson to Smith's trustee, are to the use of Smith during his life ; after his death, to the use of his children, should he have any. He has the power of appointing the respective shares to be taken by his children, and, in the event of failure of issue, he may devise to whom

he chooses; in the event of failure of issue, and of no devise, then the property goes to the brothers and sisters of Smith, and their descendants. Thus, as to the first use, Smith is both the donor and the donee; and he makes himself his own beneficiary, tying up his hitherto unfettered estate so that thereafter there can be no alienation by himself.

The trust under which Garesché holds the title to this property has been twice examined by the Supreme Court, and its provisions are fully set out in *McIlvaine* v. *Smith*, 42 Mo. 45, in which it was held that Smith had no interest in this property, subject to sale under execution. The court said, however: "The property is of such a nature that it cannot be effectually reached at law; but it is quite a different thing in equity. Here is an attempt of a man, apparently, to tie up his own property, under a deed of trust, in such a manner that himself, as owner, may be enabled to enjoy the income and set his creditors at defiance. This is a thing which the law does not allow. A man cannot own property or money and not own it at the same time. He cannot be permitted to have the beneficial enjoyment of an income of this nature beyond the reach of his honest debts. * * * The cases show that the proper remedy in such a case is a bill by the judgment-creditor to have the rents and profits, as they accrue, applied in equity to the satisfaction of the debt, as far as they will go; and the powers of the court are ample to make the remedy effectual. There would, probably, be no occasion to take the property out of the hands of the trustee; but he might be enjoined from paying over the quarterly rents to Smith, and directed to pay them over for the satisfaction of such decree as might be rendered."

Afterwards, in the attachment proceeding offered in evidence in the present case, an attempt was made to reach this fund by summoning Garesché as garnishee; but no attempt was made to attack the deed as in fraud of cred-

itors, and the Supreme Court held that, the proceeding by attachment being purely legal, it would not do to attempt thus " to draw into a court of law an exclusive equity jurisdiction," by means of the process of garnishment in attachment, and thus to call the trustee of an express trust to account to a jury. *Lackland* v. *Garesché*, 56 Mo. 269. In the present case, plaintiff seems to have adopted the very course suggested in *McIlvaine* v. *Smith*, and we do not see why his bill should have been dismissed.

It is claimed by respondents that before a creditor can have an equitable trust-estate which cannot be reached at law applied in satisfaction of his debt, he must first establish this debt by a judgment at law, and must show an execution returned unsatisfied, or that execution would be unavailing.

The general rule is, that where the demand is merely legal, and the resort is to equity to set aside a fraudulent conveyance, the complainant must obtain a judgment at law before filing his bill; but this rule does not apply, in this country, where the debtor has removed from the State, so that no judgment can be had against him. In such a case, resort may be had to equity in the first instance. This question has been recently examined and passed upon by this court, and we do not think it necessary to dwell upon the point. The cases in support of the doctrine are cited in *Kent* v. *Curtis*, 4 Mo. App. 121.

It is strongly contended that the petition in this case is fatally defective, in that it joins an action upon the notes set out in the bill with an equitable claim in the same count. But there is nothing in this objection. An equitable cause of action and a legal cause of action cannot be joined in one count, and must be distinctly and separately stated, because in the one case the party is entitled to a jury, in the other he is not. *Brown* v. *Savings-Bank, ante*, p. 1 (second opinion). This is well settled. But the rule has no application here. The present proceeding is in equity. The

primary object of the bill, the first and principal purpose it was intended to accomplish, is to subject property within the jurisdiction of the court, belonging to a debtor out of the jurisdiction of the court, and against whom no personal judgment could be had, to the payment of an indebtedness. This is stating the case in the manner most favorable to defendants, and leaving the question of attachment out of sight. The cause as stated was, therefore, one of equity cognizance, and is not within the rule, or within the reason of the rule. The defendants were not entitled to a jury to try any issue of fact which might arise in the cause. Where a court of equity is rightfully in possession of a cause, it will proceed to determine the whole matter in controversy, even if the adjustment of merely legal rights is involved. And though a chancellor may frame issues for a jury in a cause before him, he is not obliged to do so. Smith was a non-resident, and it is so alleged in the bill. No personal judgment against him could be got in an action at law. The fact that he voluntarily appeared and answered, did not change the nature of the proceeding, which was essentially equitable in any aspect in which it can be viewed. The indebtedness and non-residence of Smith, together with the fact that he had an interest in property within the jurisdiction, furnished a complete case for exclusively equitable relief. *Kent* v. *Curtis, supra*. Furthermore, any creditor seeking to obtain the removal of a fraudulent conveyance, or obstruction to levy or sale, may file a bill in equity so soon as he has obtained a specific lien upon the property in question, whether by attachment or execution. *Tappan* v. *Evans*, 11 N. H. 327. The only judgment at law possible in any proceeding on these notes, to which Smith could be made a party, was the judgment in the attachment suit, set out in the petition and offered in evidence. This was a judgment upon the notes, also set out in the petition and also offered in evidence. But it was not, and, of course, could not be, a judgment *in personam* against Smith, who

was a non-resident when it was rendered, and not served with process. It was a judgment, however, binding Smith's interest in the property described in the attachment, and within the jurisdiction of the court. It gave to plaintiff a right to a special execution against that property, and a right, also, by proper proceeding, to subject the equitable interest of Smith in this real estate to the payment of the amount found to be due on these notes. Under this execution, plaintiff declined to sell any interest of Smith, declaring that he was unwilling, by such a sale, to sacrifice valuable property; and he very properly, on this state of facts, commenced proceedings in equity to enforce, without any unnecessary sacrifice of a valuable interest in real estate, the legal rights which he had in his action at law established against any interest Smith may have in the property attached. If this cannot be done; if, on the facts stated in this petition, and proved on the trial, the plaintiff is not entitled to some specific and sufficient equitable relief consistent with the case made, he is wholly without a remedy, because he cannot compel Smith within the jurisdiction of the court. It is true that he might obtain a personal judgment against Smith in Kentucky. But when we speak of a remedy, we mean a remedy which is given by the laws of his own State, and which the courts of his own State can enforce. Courts having the assets of a debtor within their jurisdiction will not send a creditor to another jurisdiction for a satisfaction of his demand. Plaintiff needs no judgment *in personam* against Smith for the purposes of the present action, and he is not seeking such a judgment in this suit. The petition does not join an action at law with a proceeding in equity, and there is no misjoinder of counts.

It is true that the judgment in the attachment suit is no evidence of debt against the defendant, and cannot be made so in any proceeding for the purpose of obtaining a personal judgment. Wag. Stat. 189, secs. 37, 38. But it was not introduced, or needed, for any such purpose.

The plaintiff, in one aspect of this bill, is proceeding as an attaching creditor to set aside a fraudulent conveyance on property which he had attached. The record of the attachment suit was competent in this auxiliary proceeding. To exclude it, and remit plaintiff to his action at law upon the notes, is to deny him a right expressly given by statute. Wag. Stat. 192, sec. 51. The plaintiff seeks the aid of equity to render that judgment fruitful by disembarrassing, with a due regard to the rights of both debtor and creditor, the property which he had attached.

The allegations of fraud, as against plaintiff, are, we think, sufficient; and they were sufficiently proved. A conveyance without consideration, with intent to protect property from future creditors, is a fraud in law as to those creditors. *Larkin* v. *McMullin*, 49 Pa. St. 35. But, upon this point, it is enough to refer to what we have quoted from the opinion of the Supreme Court in *McIlvaine* v. *Smith*.

It remains to be considered whether this action was barred by the Statute of Limitations. Considering the equity of plaintiff as founded on the notes, and regarding this bill as a proceeding to subject the rents received by Garesché for Smith to the satisfaction of that indebtedness, this action was an action for relief under the ninth section of the act. Wag. Stat. 917, sec. 9. Such an action is barred in ten years. The first note matured in February, 1861. The cause of action then accrued, and Smith was then a resident of this State. He departed from the State in 1865, and has resided out of it ever since. The time of his absence is not to be counted. Wag. Stat. 919, sec. 16. It is plain, therefore, that the statute does not bar plaintiff as to any right he has to relief under this equity.

If we examine the question on the other aspect of the bill, as a proceeding by an attaching creditor to set aside a deed on account of fraud, the action would be barred after the lapse of ten years from the recording of the fraudulent

deed. *Rogers* v. *Brown*, 61 Mo. 187. But, of those ten years, only eight and a half had elapsed when this suit was commenced, in 1872. For the deeds of Gibson to Riggin were recorded in the summer of 1857, and the defendant left the State not later than November, 1865 ; and the running of the statute was then arrested. The first deed to Gibson was recorded in February, 1856 ; and as to that deed, also, the statute had several months to run when Smith became non-resident.

The relief on the ground of fraud must be sought within five years, and the statute provides that " the cause of action in such a case shall be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." But the plaintiff was not an attaching creditor, and, therefore, could not be considered an aggrieved party, so far as the grievance on which this equity is founded is concerned, until his attachment suit was commenced ; and that was within five years next preceding the institution of this suit.

It is suggested by counsel for appellant that this deed, and the action of defendant under it, constitute a continuing fraud, and that the case falls within the doctrine of *Martin* v. *Smith*, 1 Dill. 101 ; and that the statute, therefore, never began to run against the relief to set aside the deed, putting the question of non-residence out of sight. It is not, however, necessary to invoke this doctrine. Nor, indeed, do we regard it as important to determine whether or no an action to set aside the deed is barred. There is in the present proceeding but one substantial demand, in whatever shape it presents itself, though, by great caution, in accordance with a recognized practice in framing such bills, it is asserted in two forms, — the claim on the notes, and that on the judgment against this property which was rendered on these notes. The plaintiff's equity reaches back to the maturity of the notes, and he is entitled to relief whether the deed is attacked as fraudulent or not. Having estab-

lished a full ground for relief, entirely independent of any right to attack this deed as an attaching creditor, and having shown that Smith has an income, coming monthly into the hands of Garesché, which is within the jurisdiction of the court, and which equity can reach, every other ground of relief alleged or proved is superfluous, and the fact of its being found incapable of enforcement, for any reason, does not affect the right of plaintiff to relief on the case stated in the bill. If the deed be held valid, the rents are liable to be sequestered to pay the judgment described in the bill. The action is not barred by any provision of the Statute of Limitations.

It is insisted that Garesché, in whom was the legal title to this property, has always resided here, and that this action might well have been commenced at any time by personal service on Garesché and publication against Smith. It seems to be a sufficient answer to this objection to say that a cause of action accrued against Smith, and that the statute is express that in every such case the time of absence from the State shall be counted out. Wag. Stat. 919, sec. 16. The fact that one has left property in the State, subject to attachment, does not keep the statute running. *Hancock* v. *Hough*, 1 Mo. 678. And because plaintiff might have brought suit by publication, it does not follow that he was guilty of laches in not doing so. *Fisher* v. *Fisher*, 43 Miss. 212. Process of law could not be served on Smith; and whilst this was so, the statute was arrested as to any cause of action accruing against him. Smith was a necessary party to the action, whether he be considered as owning the beneficial interest in this property if the trust-deeds be regarded as valid, or the legal and beneficial interest if they are void. If Smith had not been made a party to the record, a judgment against Garesché, who is a mere naked trustee, without any beneficial interest in the property, would have been of no avail.

For the reasons stated, we think that the Circuit Court

erred in dismissing plaintiff's bill, and its judgment is, therefore, reversed ; and we would proceed to render a decree for plaintiff here, were it not that we do not know what the present income from this property is, what charges may be against it for taxes, or what amount the trustee has in his hands. The Circuit Court can take such further testimony as it may deem necessary on these and such other points as may serve to determine what form of decree will give to plaintiff the substantial relief to which he is entitled, without any unnecessary sacrifice of the property. A decree may be made directing Garesché to pay over a gross sum, or a monthly instalment, to plaintiff, in satisfaction of his claim ; or the encumbrance of the deed may be removed from the life-estate of Smith in so much of this property· as it may be necessary to sell ; or an alternative order may be made. The form of the decree must be left to the wisdom of the Circuit Court.

The judgment dismissing the bill is reversed, and the cause remanded for further proceedings in the Circuit Court, in accordance with the views herein expressed. All the judges concur.