### ARTHUR v. SCREVEN.

1. RECORDING ACTS.—The record of a paper not required to be recorded, nor properly admitted to record, will not operate as constructive notice to a subsequent purchaser.

2. IBID.—INFORMAL MORTGAGES.—Under the terms of the statute, which provides that "no mortgage, or other instrument in writing in the nature of a mortgage of real estate, shall be valid, so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, unless the same shall be recorded," &c., *it would seem* that the due record of an "instrument in writing, in the nature of a mortgage," would operate as constructive notice.

3. IBID.—IBID.—SEAL.—A paper in form a mortgage, with all the essentials of a legal mortgage, except that it has no seal, is not a mortgage, and does *not seem* to be an instrument in the nature of a mortgage, so far as to make its record in the proper office operate as constructive notice to a subsequent purchaser for value. A distinction suggested between a paper in the nature of a mortgage and one to which the Court of Equity would give the effect of a mortgage as between the parties; and cases reviewed.

4. IBID.—IBID.—IBID.—A seal having been formerly regarded as essential to the creation of a mortgage, and there being no statute nor decision which has ever wrought a change in this particular, it must be held to be still essential, especially after unsuccessful efforts in the legislature to dispense with this requirement. It is immaterial that the statute law has never prescribed a form of mortgage.

5. IBID.—IBID.—IBID.—As a mortgage, or a paper in the nature of a mortgage, must be under seal, and must be duly probated before it is recorded, an unsealed instrument, purporting to be either one of these papers, cannot be legally recorded so as to operate as constructive notice, for the reason that no witness thereto can swear that he saw the maker seal the instrument.

6. LIMITATION OF ACTIONS—UNSEALED INSTRUMENTS.—Action on an unsealed mortgage, securing the payment of an unsealed note, is barred by the statute of limitations after the lapse of six years.

7. IBID.—ABSENT DEBTOR—RESIDENT PURCHASER.—The suspension of the statute of limitations, as against persons out of the State, does not affect the currency of the statute in favor of a resident purchaser from a nonresident mortgagor, as against an action of foreclosure.

MR. JUSTICE POPE *dubitante* as to Nos. 1–5.

Before WALLACE, J., Richland, October, 1892.

Action by E. R. Arthur, clerk of court, as administrator of W. N. Marsh, deceased, against E. W. Screven and others.

*Messrs. Lyles & Muller,* for appellant.

*Messrs. Barron & Ray,* contra.

April 10, 1893.    The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER.    This was an action for the foreclosure of an instrument in writing claimed to have the effect of a mortgage, on certain real estate in the city of Columbia. The facts of the case seem to be undisputed, and are, therefore, not set out in the "Case," but must be gathered from

the decree of his honor, Judge Wallace, which is excepted to solely on the ground of errors of law. From what is there stated, we learn that on the 1st of January, 1873, one Ezra W. Wheeler executed his promissory note, whereby he promised to pay to the plaintiff's intestate, W. N. Marsh, twelve months after the date thereof, the sum of two thousand dollars, with interest at the rate of ten per cent. per annum, payable annually, and that on the 23d of April, 1873, pursuant to an agreement in writing to that effect, signed and delivered an instrument in writing, in the form of a mortgage, but omitted to affix his seal thereto. This instrument was proved and recorded in the office of the register of mesne conveyances for the County of Richland on the day of its date. It appeared in evidence that said Wheeler left the State some time in the year 1876, and never returned, and that he died some three years before the trial, some time in the year 1889. It seems that in January, 1880, F. W. McMaster bought the real estate, purporting to be covered by the alleged mortgage, from Louis LeConte, paying the purchase money at the time; but as LeConte seems to have held under a tax title only, the Circuit Judge lays no stress upon that purchase. But on the 30th of January, 1882, the said real estate was sold by the United States marshal as the property of Wheeler, under execution against him, and McMaster again became the purchaser, paid the purchase money, and received title from the marshal; and after holding possession until the 15th of March, 1888, he on that day sold and conveyed, with general warranty, the said property to the defendant, E. W. Screven, who then paid the purchase money, took possession, and has ever since retained the same.

This action was commenced on the 27th of February, 1892, against said Screven, the other defendants being made parties as holders of liens subsequent in date to the instrument in writing set up by the plaintiff as a mortgage; and the only judgment demanded in the complaint is for a sale of the premises, and the application of the proceeds to the payment of plaintiff's claim, together with the costs of the action; but no personal judgment for any deficiency is demanded against any one. The defendants set up two defences: 1st, plea of pur-

chaser for valuable consideration without notice; 2d, the statute of limitations. Both of these defences having been sustained by the Circuit Judge, he rendered judgment dismissing the complaint; and from his judgment plaintiff appeals upon the several grounds set out in the record, which make, substantially, but two general questions: 1st. Whether there was error in sustaining the plea of purchaser for valuable consideration without notice. 2d. Whether there was error in sustaining the plea of the statute of limitations.

Inasmuch as there is no dispute as to any of the other requisites to sustain a plea of purchase for valuable consideration, and inasmuch as it is conceded that neither Screven nor McMaster had any actual notice at the time of their respective purchases of the paper set up by the plaintiff as a mortgage, the question first stated is narrowed down to the inquiry, whether the fact that such paper was spread upon the records of the proper office before either of these gentlemen bought, will operate as constructive notice. And as we regard the rule to be well settled by the cases of *Villard* v. *Robert*, 1 Strob. Eq., 393, and *Harper* v. *Barsh*, 10 Rich. Eq., 149, recognized in a number of subsequent cases, that the record of a paper not required to be recorded will not operate as constructive notice to a subsequent purchaser, the inquiry is still further narrowed down to the question whether the paper in question is one which is required to be recorded, or rather, whether the record of such a paper will operate as constructive notice.

It is earnestly contended that the paper here in question is an "instrument in writing in the nature of a mortgage," and as such entitled, when recorded, to operate as constructive notice, under the provisions of section 1 of the act of 1843, incorporated in the Revised Statutes of 1872, page 422 (which was the law in force at the time the transaction under consideration took place), and afterwards incorporated as section 1776, in the General Statutes of 1882. That section in the Revised Statutes of 1872 (and there has been no substantial change since) reads as follows: "No mortgage or other instrument in writing in the nature of a mortgage of real estate

shall be valid, so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, unless the same shall be recorded," &c. It must be admitted that, if the paper under consideration can be regarded as an instrument in writing in the nature of a mortgage, and if it was duly recorded, the language of the statute implies very strongly, if not necessarily, that such record would operate as constructive notice.

Two questions here arise, both of which must be determined in the affirmative before this branch of the appeal can be sustained: 1st. Is this paper an instrument of writing in the nature of a mortgage? 2d. Has it been properly admitted to record? Upon the first of these questions we have been very much impressed by the argument of the counsel for appellant, and we confess we have felt very great difficulty in deciding it; so much so, that we would feel some hesitation in resting our conclusion upon the answer to this question. It seems to us, however, that there is a difference between a paper which would be given the effect of a mortgage by the Court of Equity as between the parties to it, and a paper which is in the nature of a mortgage. For example, a mere agreement to give a mortgage might, under certain circumstances, be given the effect of a mortgage as between the parties, and yet such a paper could scarcely be regarded as an instrument in writing in the nature of a mortgage, for it would be a mere contract, perhaps evidenced simply by a letter, and all the essential requisites to the creation of a mortgage would be wanting. The argument seems to ignore the distinction between the essential requisites to the creation of a mortgage and the effect which may be given to it, after it has been created, either by statutory provisions or by judicial construction. One of the essential requisites to the making of a will is that it shall be executed in the presence of three subscribing witnesses, and notwithstanding the various changes which have been made in the effect which shall be given to various provisions which it may contain, it is quite certain that no paper not so executed can ever be regarded as a will or as an instrument in writing in the nature of a will. Now while there have been very great

11—39

changes made in the "nature," or, to be more strictly correct, in the effect, of a mortgage of real estate, as shown by the cases of *Simons* v. *Bryce*, 10 S. C., 368, and *Bredenberg* v. *Landrum*, 32 *Id.*, 215, we are not aware of any change made in the requisites to the creation of such a paper. If, therefore, it was once requisite to the execution of a mortgage that it should be signed, sealed and delivered in the presence of two subscribing witnesses, these requisites are still necessary. Hence we are inclined to hold that no paper in which either of these essentials are wanting can be regarded either as a mortgage or as an instrument in writing in the nature of a mortgage.

The cases of *Talmadge* v. *Oliver*, 14 S. C., 522, and *Herring* v. *Cannon*, 21 *Id.*, 212, relating as they do to *personal* property, cannot affect this question. In the case of *Harper* v. *Barsh*, 10 Rich. Eq., 149, it was distinctly held that a paper purporting to be a mortgage, not executed in the presence of two subscribing witnesses, was not such a paper as that the record thereof would operate as constructive notice. This was for the reason that two witnesses were necessary to the creation of a mortgage of real estate, and as that great chancellor (Wardlaw), quoting from his own opinion in *Cummings* v. *Coleman*, 7 Rich. Eq., 519, says: "Where one has notice of an instrument of conveyance void for incompleteness of execution—for example, a devise of lands without attesting witnesses—he may safely treat the instrument as legally invalid, and in disregard of it may make a contract concerning the subject." And in the case from which he quotes, he goes on to draw a distinction between a case where the instrument is void for incompleteness of execution, and one in which it is void or defective from some other cause; thus justifying the distinction which we have attempted to draw between a paper lacking some essential requisite to its due execution, and the effect which such paper may be entitled to have after it has been properly executed. It is a mistake, therefore, to suppose that the case of *Harper* v. *Barsh* has been practically overruled by the case of *Bredenberg* v. *Landrum*. In the former, Chancellor Wardlaw was considering a paper defectively executed, while in the latter Mr. Justice McGowan was considering the effect of a paper

which had been properly executed. There is not, therefore, the slightest inconsistency in the two cases. It is quite true, that in *Harper* v. *Barsh*, the paper there under consideration had been signed long before the act of 1843 had been passed, but, as we have seen, the decision there does not rest upon any ground which conflicts with the provisions of that act; and it is noticeable that, though the decision was made long after the act of 1843 was passed, no allusion is made to it—no doubt, for the reason that such act related to a different matter altogether.

That a seal was originally necessary to the due execution of a mortgage of real estate, we do not think can be questioned, and we do not understand that it is questioned in this case; and as we know of no statute nor even any judicial decision which dispenses with the necessity of a seal, we think it must still be regarded as one of the essential requisites to the due execution of such a mortgage. It is urged that it is a mere formality, the reason for the observance of which has long since ceased and should not, therefore, be any longer required. But it is not for the court to change the law, as it has been long established. That power is very properly entrusted to another department of the government, and it is well known that one or more attempts have been unsuccessfully made to induce the legislature to dispense with the necessity for seals. In view of this fact, if there were no other reasons, we would not feel at liberty, even if we had the power, to make a change in the law which the representatives of the people have declined to make. The fact that there is no prescribed form of a mortgage of real estate, certainly does not justify the court in dispensing with any of the requisites to its legal execution. As well might it be said, that as there is no prescribed form of a will, the court might dispense with the requirement that it shall be executed in the presence of three subscribing witnesses. The form of an instrument is one thing and the essentials to its due execution is a totally different matter.

But even if we are in error in supposing that the paper here in question cannot be regarded as an instrument in writing in

the nature of a mortgage, yet there is another obstacle in the way of the appellant, which seems to us to be insurmountable. In order that a mortgage or instrument in writing in the nature of a mortgage shall operate as constructive notice, the statute expressly requires that it shall be duly recorded, which, of course, means recorded according to law. Now, as no instrument of the kind can be legally recorded until its execution shall first be proved by the affidavit of a subscribing witness (Revised Statutes of 1872, page 188), it follows that if, as we have seen, a seal was necessary to the due execution of the paper here in question, and there was no seal (as is admitted), the execution of the paper never could have been proved in the manner required by the statute, and, therefore, never could have been properly recorded. If, then, the paper was never properly recorded, the mere fact that it was spread upon the record amounted to nothing, and could not make it operate as constructive notice. This doctrine was conclusively settled in the case of *Woolfolk* v. *Graniteville Manufacturing Company*, 22 S. C., 332, where it was held that a deed which was copied upon the record, upon what purported to be probate of its execution, taken before a magistrate in Georgia, was illegally recorded, and, therefore, did not operate as constructive notice. See, also, *McPherson* v. *McPherson*, 21 S. C., at page 268, and *Mowry* v. *Crocker*, 33 *Id.*, 436, which, though not exactly in point, are illustrative of the doctrine above stated.

Next, as to the statute of limitations. There can be no doubt that the plaintiff's right of action against McMaster accrued as early as 30th January, 1882, when he bought the property at the marshal's sale and took possession thereof, and if six years was the time limited for bringing such action, then the plaintiff's right of action was barred on the 30th day of January, 1888, before Screven bought from McMaster. It seems to us clear that six years was the limit, for, by provisions of the Code then of force, an action upon a contract, obligation or liability, except those arising under judgments or certain instruments under seal, must be commenced within six years from the accrual of the right of action;

and as this was not an action either upon a judgment or instrument under seal, it follows necessarily that the limit was six years.

But it is urged, that inasmuch as section 123 (now section 121) of the Code provides, that "if, when the cause of action shall accrue *against any person*, he shall be out of the State, *such* action may be commenced within the terms herein respectively limited, after the return of *such* person into this State; and if, after *such* cause of action shall have accrued, *such* person shall depart from and reside out of this State, or remain continuously absent therefrom for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of *such* · action;" and inasmuch as the said Wheeler did depart from the State after the right of action against him had accrued, and remained absent therefrom up to this time, the right of action here is not barred by the statute. We cannot accept this view; for it is manifest, from the words which we have italicized in the foregoing quotation from the Code, that the provisions of that section relate only to the absentee, and have no reference whatever to any other person who may be liable to suit even upon the same cause of action accruing at the same time. Otherwise, if two persons should sign a joint and several promissory note, and one of them should leave the State and never return, the other could never plead the statute of limitations to an action brought for the breach of the contract evidenced by the note. This certainly could not have been the intention of the legislature, and, in our judgment, the language used in the section does not require, but, on the contrary, forbids, such a construction. Here, however, the case is still stronger, for the cause of action against Wheeler is not the same as against McMaster, and did not accrue at the same time. We do not think, therefore, that because Wheeler is debarred from pleading the statute, that McMaster would be also.

Again, appellant insists that before the right of action against McMaster accrued, the 113th section of the Code was amended by the act of 1880 (17 Stat., 415), so as to extend the limit from six to twenty years. The language of that

amendment is: "An action upon a bond, or other contract in writing, secured by a mortgage of real property," and it is sufficient to say that this is not "an action upon a bond, or other contract in writing, secured by a mortgage of real property," for the most that can be claimed for the paper upon which the plaintiff's action is based, is that it is an instrument in writing in the nature of a mortgage, as it certainly is not a mortgage. It seems to us clear, therefore, that the right of action against McMaster having been barred by the statute, he held the property in question free from any claim against it by the plaintiff, and that when he conveyed it to the defendant Screven, with full covenant of warranty, Screven became entitled to all the rights which McMaster had, including the right of exemption from plaintiff's action. Otherwise the result would be that McMaster, though fully protected from liability to the plaintiff while he held, yet, under his covenant of warranty, he would now be liable, in effect, to the plaintiff, unless his vendee Screven could avail himself of the protection which McMaster had acquired.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. JUSTICE POPE. I concur in the result, basing my concurrence upon the plea of the statute of limitations. I am not prepared to go so far as to hold that the paper in question should not be held to be a mortgage.