(104 N. W. 525.)

---

THE COLONIAL & UNITED STATES MORTGAGE COMPANY, LIMITED, v. THE NORTHWEST THRESHER COMPANY.

Opinion filed April 27, 1905.

**Statute of Limitation in Mortgage Foreclosure — Suspension of the Statute.**

1. Action to foreclose a mortgage on real property is not a proceeding in rem, but is an action in personam, and comes within the operation of section 5210, Rev. Codes 1899, which excepts from the period limited for commencing an action the time during which the person against whom the cause of action has accrued is absent from the state.

**Same — Foreign Corporation May Plead the Statute.**

2. A foreign corporation which has complied with the laws of this state governing such corporations, and which has been regularly and continuously doing business in this state during the entire period required to bar an action, and during all that time has had an agent resident here upon whom process could be served, can avail itself of the statute of limitations of this state.

**Same — Absence of Mortgagee After Parting With Title.**

3. The absence of the mortgagee from the state after he has parted with the title to the mortgaged property does not prevent the statute of limitations from running in favor of his grantee.

**Foreclosure of Mortgage May Be Barred Although the Debt Secured Is Not Outlawed.**

4. An action to foreclose a mortgage on real property is a remedy distinct from the remedies by which the creditor may enforce the personal obligation for the debt secured by the mortgage, and may become barred by the statute of limitations, even though the debt is not outlawed.

**Mortgagor's Grantee May Plead Statute of Limitation Although Mortgage Debt Is Neither Barred nor Discharged.**

5. Although the property passed to the defendant's grantor subject to the mortgage, and was in equity the primary fund for the payment of the mortgage debt, that doctrine cannot be extended so as to prevent the defendant from availing himself of the statute of limitations as a defense against an action to foreclose the mortgage, even though the debt is neither discharged nor barred as against the debtor.

Young, J., dissenting.

Appeal from District Court, Cass county; *Pollock, J.*

Action by the Colonial & United States Mortgage Company, Limited, against the Northwestern Thresher Company. Judgment for plaintiff, and defendant appeals.

Reversed.

*Ball, Watson & Maclay,* for appellant.

The absence from the state, or the nonresidence of the original mortgagor, does not extend the time within which an action of foreclosure may be brought, as against subsequent grantees or holders of the equity of redemption. Wood v. Goodfellow, 43 Cal. 185; Watt. v. Wright, 66 Cal. 202, 5 Pac. 91; Lord v. Morris, 18 Cal. 482; George v. Butler, 67 Pac. 263; Anderson v. Baxter, 4 Ore. 105; Eubanks v. Leveridge, Fed. Cases, 4544; Bush v. White, 85 Mo.. 339; Arthur v. Screven, 17 S. E. 640; Fowler v. Wood, 28 N. Y.. Supp. 976.

Where no personal liability rests upon a person to pay the debt,. the action is substantially one in rem. Hogaboom v. Flower, 72 Pac. 547.

If the mortgagor has parted with the title and has no power to give a new mortgage binding upon the premises, he has no power to revive a mortgage already outlawed. Cook v. Prindle, 66 N. W. 781; Hubbard v. Insurance Co., 25 Kan. 172; Schmucker v. Sibert, 18 Kan. 104, 26 Am. Rep. 765.

The right to sue upon the debt (not the debt itself) might be extinguished, while the right to bar the redemption might still exist as against the owner of the property. Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518.

As pointed out in Arthur v. Screven, and Fowler v. Wood, supra, the action contemplated by the statute is an action *against the person* who has left the state. Rev. Codes 1899, section 5210. Although the action is in rem, it is necessary to make the owner of the legal title defendant since the action is brought to foreclose his right of redemption. The action exists only against the owner, and if the absence of any person can affect the right to commence and maintain an action in rem, it must be the absence of him against whom the action may be brought.

A foreign corporation can plead the statute of limitations if it has placed itself in such a position that it can be served with process. 13 Am. & Eng. Enc. Law, 904; Turcott v. Railway, 45 S. W. 1067; City of St. Paul v. Chicago, M. & St. P. Ry. Co., 48 N. W. 17, 21.

*Newman, Spalding & Stambaugh,* for respondent.

This is a civil action in personam, and all the provisions of the Code of Civil Procedure for the limitation of time for the bringing of civil actions on contract for the payment of money and the foreclosure of mortgages, as well as suspending the running of the statute, as those limiting the time for commencing such action, apply with full force to this action. Rev Codes 1899, section 5156 and 5181. Anderson v. Baxter, 4 Ore. 105, followed in Eubanks v. Leveridge, 4 Sawyer, 274, stand alone in holding a foreclosure action to be one in rem. The latter case follows only because pending in a federal court sitting in Oregon. The doctrine is repudiated in Minnesota, Iowa and Illinois. Walley v. Eldridge, 24 Minn. 358; Brown v. Rockhold, 49 Iowa, 282; Emery v. Kiegham, 94 Ill. 543.

The statute of limitations, including sections suspending its running, applies to all actions in which there is necessarily a plaintiff and a defendant, regardless of the character of the action, the relief sought or other circumstances. Grattan v. Wiggins, 23 Cal. 16.

Absence of the mortgagor from the state at the maturity of the debt secured by the mortgage, his continuous residence out of, and failure to return to, the state, prevents the running of the statute of limitations. Section 4859, Comp. Laws.

The statute cannot be pleaded by either of the subsequent grantees, subject to the mortgage, until both the mortgage and debt are barred. Rev. Codes, section 4694; Waterson v. Kirkwood, 17 Kan. 9; Schmucker v. Seivert, supra; Cross v. Allen, 141 U. S. 528, 35 L. Ed. 843, 12 Sup. Ct. Rep. 67; Ewell v. Daggs, 108 U. S. 142, 27 L. Ed. 682; Eborn v. Cannon, 32 Tex. 244; McKean v. James, 87 Tex. 104; Mahon v. Cooley, 36 Iowa, 479; Jones on Mortgages, section 1204; Coe v. Finlayson, 26 So. 704; Willis v. Farley, 24 Cal. 491; N. Y. Life Ins. Co. v. Covert, 6 Abb. N. S. 154; Murdock v. Waterman, 145 N. Y. 55, 39 N. E. 829; Herndt v. Porterfield, 9 N. W. 322.

Appellant took the mortgaged premises subject to the mortgage debt. The land continued in its hands a primary fund for the payment of the debt, and to the extent of the value of the mortgaged premises it became a principal debtor. Johnson v. Zink, 51 N. Y. 333; Sands v. Church, 6 N. Y. 347; Hartley v. Harrison, 24 N. Y. 170; Freeman v. Auld, 44 N. Y. 50; Insurance Co. v. Nelson, 78 N. Y. 137; Bennett v. Bates, 94 N. Y. 354; Murray v. Marshall, 94 N. Y. 611; Colgrove v. Talman, 67 N. Y. 94, 23 Am. Rep. 90; Horton v. Davis, 26 N. Y. 495; Fuller v. Hunt, 48 Iowa, 163; Tice v. Anin, 2 Johns. Ch. 125; Palmer v. Butler, 36 Iowa, 576; Sanger v. Nightingale, 122 U. S. 176, 30 L. Ed. 1105.

The statute of limitations commenced to run upon this implied agreement, that having taken the premises subject to the mortgage, promised to pay it, at the time it was made, that is, at the time of the conveyance of the equity of redemption. Schmucker v. Seibert, supra.

The land being in the hands of appellant, a primary fund for the payment of the debt secured by the mortgage, which is still a subsisting, valid debt, and it, having purchased subject to the mortgage, cannot plead the statute of limitations. Hyer v. Pruyn, 7 Paige Ch. 465, 34 Am. Dec. 355; Hughes v. Edwards, 9 Wheaton, 489, 22 U. S. 489, 6 L. Ed. 142; Waterson v. Kirkwood, 17 Kan. 9; Schmucker v. Seibert, supra; Life Ins. & Trust Co. v. Covert, 6 Abb. Pr. N. S. 154; Murdock v. Waterman, supra.

A foreign corporation cannot plead the statute of limitations. Olcot v. Tioga R. R. Co., 20 N. Y. 210, 75 Am. Dec. 393; Rathburn v. Northern Central Ry. Co., 50 N. Y. 656; Larson v. Aultman & Taylor Co., 56 N. W. 915; Hanchett v. Blair, 100 Fed. 817; Bauserman v. Blunt, 147 U. S. 647, 13 Sup. Ct. Rep. 466, 37 L. Ed. 316; State v. Cent. Pac. Ry. Co, 10 Nev. 47; N. Mo. R. R. Co. v. Akers, 4 Kan. 453, 96 Am Dec. 183; Lain v. Bank, 6 Kan. 74; Morrill v. Ingle, 23 Kan. 32; Bauserman v. Charlotte, 46 Kan. 482; State v. National Acc. Soc. of New York, 79 N. W. 220; Thompson on Corporations, sections 7841, 7900; Rev. Codes, section 5121.

ENGERUD, J. This is an action to foreclose a mortgage upon 160 acres of land situated in Dickey county. The mortgage was executed on May 16, 1883, and recorded on June 11, 1883. It was given by Fred West, who was then the owner of the land, to secure his note for $335 of even date. The note became due November 1, 1888. No payments have been made upon it. In the fall of 1887 West moved from the territory of Dakota, and has since been absent from this jurisdiction. In December, 1887, after leaving the territory, he conveyed the land to E. S. Brown, receiver of the Northwestern Manufacturing and Car Company, a Minnesota corporation. On February 1, 1888, Brown conveyed to the Minnesota Thresher Manufacturing Company, also a Minnesota corporation. Both deeds expressly except the plaintiff's mortgage from the covenants of warranty. On August 7, 1901, the last-named grantee conveyed to R. H. Bronson, who had been appointed receiver for said corporation, and on August 9, 1901, the latter conveyed to the Northwest Thresher Company, a Minnesota corporation, the defendant in the present action. These several corporations had complied with the laws of the territory and state, and were at all times amenable to suit in this jurisdiction. The mortgagor and debtor is not made a party to this action. The only relief sought is a decree for the foreclosure of the mortgage and the sale of the mortgaged premises to satisfy the debt. The defendant interposed as its sole defense the statute of limitations. This defense was overruled by the trial court, and judgment was rendered as prayed for in the complaint. The defendant has appealed from the judgment, and demands a review of the entire case in this court, under section 5630, Rev. Codes 1899.

The only question involved upon this appeal is whether the statute of limitations is available to this appellant as a defense against

the plaintiff's action. The time within which an action to fore-close a mortgage of real property must be commenced in this state is limited to ten years from the time the cause of action accrued. Rev. Codes 1899, sections 5199, 5200. If, when a cause of action shall accrue against any person, he shall be out of the state, the statute does not begin to run until his return into the state. Rev. Codes 1899, section 5210.

Appellant first contends that this action is one in rem against the mortgaged property, and hence that the several objections which will be hereafter noticed, urged against the defense of the statute on the ground that the person against whom the cause of action accrued was absent from the state, have no application. We are agreed that this is not an action in rem, but an action in personam. Our views on this subject are fully and clearly expressed by Judge Mitchell in Bardell v. Collins, 44 Minn. 97, 46 N. W. 315, 9 L. R. A. 152, 20 Am. St. Rep. 547: "It is not an action in rem, but an action in personam. It is true, it has for its object certain specific real property against which it is sought to enforce the lien of the mortgage, and in that sense it partakes somewhat of the nature of a proceeding in rem, but not differently, or in any other sense, than do actions in ejectment, replevin, for specific performance of a contract to convey, to determine adverse claims to real estate and the like. The rights and equities of all parties interested in the mortgaged premises are to be adjusted in the action, which proceeds, not against the property, but against the persons; and the judgment binds only those who are parties to the suit and those in privity with them. Whalley v. Eldridge, 24 Minn. 358. Next, it is not only an action in personam, but is also strictly judicial in its character, proceeding according to due course of common law, like any other action cognizable in courts of equity or common law." We are all, therefore, of the opinion that the absence from the state of the person against whom the cause of action accrued stays the running of the statute of limitations against an action to foreclose a mortgage, the same as in any other action in personam.

The mortgage debt was due November 1, 1888, and the present cause of action, therefore, accrued not later than November 2, 1888. At that time the mortgaged premises were owned by the Minnesota Thresher Company, and such ownership continued until 1901. That company was a foreign corporation organized and existing under the laws of Minnesota. It was stipulated to be a fact,

however, that said corporation during all that time was doing business here; that during all the time mentioned it had a resident agent authorized to accept service of process, and had in all respects complied with the laws of the territory, and subsequently those of the state, relating to foreign corporations doing business here.  It was further stipulated to be a fact that the appellant Northwest Thresher Company was organized in June, 1901, under the laws of Minnesota, as the successor of the Minnesota Thresher Company, for the purpose of taking and absorbing the property, assets and business of the old company, and that the new company has continued to do business in this jurisdiction, and has complied with all the conditions imposed by law upon foreign corporations doing business in this state.  The respondent contends that the statute does not run in favor of a foreign corporation, even though it has been continuously doing business in this state, and though it could at all times have been personally served with process within this jurisdiction.  The weight of authority is against respondent's contention. Huss v. Railway Co., 66 Ala. 472; Lawrence v. Ballou, 50 Cal. 258; King v. National M. & E. Co., 4 Mont. 1, 1 Pac. 727; Wall v. Railway Co., 69 Iowa, 498, 29 N. W. 427; Insurance Co. v. Duerson's Ex'r, 28 Grat. 630; Turcott v. Railway Co. (Tenn. Sup.) 45 S. W. 1067, 40 L. R. A. 768, 70 Am. St. Rep. 661; City v. Railway Co. (Minn.) 48 N. W. 17; Pennsylvania Co. v. Sloan, 1 Ill. App. 364; Abell v. Insurance Co., 18 W. Va. 400.  The courts of New York, Wisconsin and Nevada hold that a foreign corporation is incapable of being present in a state other than that under whose laws it exists, and hence, under all circumstances, a foreign corporation is absent from all other states than that of its domicile.  Consequently those courts hold that a foreign corporation comes within that provision of the statute of limitations which excepts absentees from its operation.  Olcott v. Railway Co., 20 N. Y. 210, 75 Am. Dec. 393; Rathbun v. Railway Co., 50 N. Y. 656; Larson v. Aultman & Taylor Co. (Wis.) 56 N. W. 915, 39 Am. St. Rep. 893; Insurance Co. v. Fricke (Wis.) 74 N. W. 372, 41 L. R. A. 557; State v. Society (Wis.) 79 N. W. 220; Robinson v. Imperial, etc., Co., 5 Nev. 44.  In our opinion, the rule adopted by the majority of the courts is the sound one—that a corporation, although created by the laws of another state, should be deemed to be present in the state, and entitled to the protection of the statute of limitations, if it has been regularly engaged in doing business in this state, and has had

its agent or agents here, and been amenable to personal service of the process of our courts.

It is urged, however, by respondent, that the decision in Olcott v. Railway Co., 20 N. Y. 210, 75 Am. Dec. 393, is conclusive upon us, because our statute of limitations, including the provision which now appears as section 5210, Rev. Codes 1899, was borrowed from New York, and adopted in this state after the decision in Olcott v. Railway Co. was rendered, and hence it must be presumed that the act was adopted with the interpretation placed upon it by the courts of the state from which it was borrowed. The rule invoked is a familiar one often recognized by this court, but we do not think it has any application in this case. The defendant in that case was a Pennsylvania corporation, and had not been amenable to process in New York the full six years required to bar the action. It was asserted in its behalf, however, that the provisions which excepted from the operation of the statute persons absent from the state applied only to natural persons; and it was argued, therefore, that a foreign corporation could successfully plead the limitation statute of New York in bar of an action against it in that state, even though it had been beyond the reach of process from the courts of that state the entire six years. The court held that a corporation was a "person" within the meaning of the law, and that, if it had not been subject to the process of the courts of the state, it could not invoke the statute of limitations. Whatever else was said in that case was obiter dicta.

The question whether a corporation can or cannot be present in any state other than that under whose laws it was organized is a question rather of general law than of interpretation of this statute. It is a question we should feel at liberty to decide for ourselves, even if the rule counsel invokes were an inflexible one. We hold, therefore, that the statute of limitations has run in favor of this defendant and its predecessor, the Minnesota Thresher Company, if the latter was the person against whom the cause of action accrued.

This brings us to the question upon which the members of this court are unable to agree. Did the absence from the state of the mortgagor and debtor, West, prevent the running of the statute against this suit to foreclose the mortgage? The courts of Illinois, Texas, Kansas and Iowa hold that the debtor's absence, even though he has parted with the title to the mortgaged premises, tolls the

statute. In California, Washington, Oregon, Nebraska, Missouri, New York and South Carolina the contrary has been held. The majority of the court has reached the conclusion that the absence of West did not toll the statute. Our attention has been called to the following cases from Illinois: Emory v. Keighan, 94 Ill. 543; Schifferstein v. Allison, 24 Ill. App. 294; Id., 123 Ill. 662, 15 N. E. 275; Banking Ass'n v. Bank, 157 Ill, 524, 41 N. E. 919; Jones v. Foster, 175 Ill. 459, 51 N. E. 862; Richey v. Sinclair, 167 Ill. 184, 47 N. E. 364. Analysis will show that none of these cases are authority in this jurisdiction. In Emory v. Keighan, Banking Ass'n v. Bank and Jones v. Foster, the facts were that the owner of the equity of redemption had been absent from the state; and in Schifferstein v. Allison a partial payment had been made within the statutory period by the owner of the fee. In Richey v. Sinclair, however, the mortgagor had been absent from the state after he had parted with the title, and it was held that his absence prevented the statute from running in favor of his grantee. The reasoning in the last case cited, as well as in the others from that state, is based upon two propositions, which will be found most clearly set forth in Pollock v. Maison, 41 Ill. 516; (1) A mortgage was there regarded as a conveyance of an estate in land, defeasible only by the extinguishment of the debt. (2) The statute of limitations was regarded as creating a presumption of payment or release of the debt by lapse of time, and hence the neglect of the creditor to commence an action to recover his debt within the statutory period was presumptive evidence that the debt was extinguished. It followed as a necessary consequence that, if the debt was extinguished, the mortgagee's estate was likewise extinguished, and, conversely, if the debt was not extinguished, the mortgagee's title was not defeated. As to whether the later rulings in Illinois are sound in principle, in view of the changes made by the legislature of that state in the limitation laws since the decision in Pollock v. Maison, we venture no opinion. See, however, Tate v. Hawkins, 81 Ky. 577, 50 Am. Rep. 181. It is manifest that the decisions from Illinois proceed upon a theory that is untenable in this state. Here, under the express provisions of our Civil Code, a mortgage is a mere lien, and conveys no estate in the land. Rev. Codes 1899, section 4699; Halloran v. Holmes, 13 N. D. 411, 101 N. W. 310. The statute of limitations of this state does not create presumptions or extinguish obligations. It merely bars the remedy upon which it operates, if

the defendant elects to avail himself of the statutory defense by answer. Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518; Wood on Limitations, section 5; Fowler v. Wood, 78 Hun, 304, 28 N. Y. Supp. 976, affirmed 150 N. Y. 584, 44 N. E. 1124. In Oregon and Nebraska it was held that the absence of the mortgagor did not toll the statute, because the action to foreclose was an action in rem. Anderson v Baxter, 4 Ore. 105; Peters v. Dunnels, 5 Neb. 460. We cannot follow these cases, because we hold that this action is not in rem. The decisions from Texas, Kansas and Iowa are in point, but, in our opinion, those decisions rest on propositions which are as unsound in principle as they are opposed to precedent. They lead to absurd and unjust results, and thwart the object sought to be obtained by the statute, instead of promoting that object and furthering justice. Cases fairly representing the views of the Texas courts are Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682; Falwell v. Hening, 78 Tex. 278, 14 S. W. 613. From Kansas may be cited Waterson v. Kirkwood, 17 Kan. 9, and Schmucker v. Sibert, 18 Kan. 104, 26 Am. Rep. 765; and from Iowa, Clinton Co. v. Cox, 37 Iowa, 570; Brown v. Rockhold, 49 Iowa, 282; Robertson v. Stuhlmiller, 93 Iowa, 326, 61 N. W. 986; and Leeds Lumber Co. v. Haworth, 98 Iowa, 463, 67 N. W. 383, 60 Am. St. Rep. 199.

The rule adopted by these several courts seems to have been based upon the same reasons. Those reasons are tersely stated in Clinton County v. Cox, 37 Iowa, 570, as follows: "Under the laws of this state a mortgage conveys no interest in or title to lands, but is simply a lien thereon for the purpose of securing the indebt·edness which is its foundation. It is an incident—a security in the nature of a lien—of the debt. It survives until the debt be paid or discharged, or the mortgage is released. It is a convoy bearing a lien for the protection of the debt, and as long as that exists it is not relieved of the duty of protection, or rendered ineffective for that purpose. When the debt is discharged, or, by operation of law, may no longer be enforced, its functions terminate, and not before." In that case, as in the others cited, it was held that the absence of the debtor after he had parted with the title prevented the statute from running in favor of his grantee against a suit to foreclose. It is clear that a part payment by the mortgagor after the conveyance would have had the same effect, because, under the rule which these cases announce, any act which prevents

the statute from running in favor of the debtor has the like effect on the mortgage, whether the debtor has any interest in the mortgaged premises or not.

It will be observed that the fundamental proposition upon which the reasoning is based which has led to the conclusions reached by the courts of Iowa, Kansas and Texas is this (quoting from Clinton Co. v. Cox, 37 Iowa, 570) : "It [the mortgage] is an incident * * * of the debt. It survives until the debt be paid or discharged, or the mortgage is released. * * * When the debt is discharged, or by operation of law may no longer be enforced, its functions terminate, and not before." The fallacy in this proposition is patent. It is true that the mortgage is a mere incident to the debt—"a convoy bearing a lien for the protection of the debt." It is also true that the extinguishment of the debt also extinguishes the mortgage. It is not true, however, that, when the personal liability for the debt is no longer enforceable by reason of the statute of limitations, the functions of the mortgage terminate. It is not true, because the fact that the statutory defense is available to the debtor does not extinguish the debt. It merely bars the remedy to enforce the personal liability, and leaves the debt in existence. Consequently, so long as the debt is not extinguished, the mortgage exists, and is enforceable until the remedies to enforce the lien are also barred by the lapse of time within which the statutes require them to be invoked. The statute of limitations operates on the remedy only. That being the effect and operation of the statute, it follows that the remedy against the debtor on his personal liability may be barred by lapse of time and yet the remedy upon the mortgage remain available; and it is likewise apparent that the converse is true, the remedy for the enforcement of the mortgage may be barred although an action at law against the debtor is still maintainable.

The decisions in Kansas, Iowa and Texas are erroneous, because those courts have misapplied the doctrine that a mortgage is a mere incident of the debt it secures. It is true that, by reason of this relationship of the mortgage to the debt, anything that operates to extinguish the latter necessarily discharges the former, because the incident cannot survive the principal. These courts, however, fail to distinguish between the extinguishment of the debt itself and the absence or loss of a remedy to enforce the personal liability for it. The failure to make the distinction is apparently due to the

fact that those courts have assumed, as it was expressly declared in Schmucker v. Seibert, 18 Kan. 104, 109, 26 Am. Rep. 765, and in Duty v. Graham, 12 Tex. 427, 435, 436, 62 Am. Dec. 534, that, because the mortgage is an incident to the debt, therefore the remedy to enforce the lien was also a mere incident or part of the remedy or cause of action against the debtor to enforce his personal liability. This reasoning, and the propositions upon which it rests, are in direct conflict with the overwhelming weight of authority. Joy v. Adams, 26 Me. 330; Thayer v. Mann, 19 Pick. 535; Richmond v. Aiken, 25 Vt. 324; Baldwin v. Norton, 2 Conn. 161; Pratt v. Huggins, 29 Barb. 282; Fowler v. Wood, 78 Hun, 304, 28 N. Y. Supp. 976; Colton v. Depew, 60 N. J. Eq. 454, 46 Atl. 728, 83 Am. St. Rep. 650; Demuth v. Bank, 85 Md. 315, 37 Atl. 266, 60 Am. St. Rep. 322; Arthur v. Screven (S. C.) 17 S. E. 640; Elkins v. Edwards, 8 Ga. 326; Bizzell v. Nix, 60 Ala. 281, 31 Am. Rep. 38; Browne v. Browne, 17 Fla. 607, 35 Am. Rep. 96; Kendall v. Clarke, 90 Ky. 178, 13 S. W. 583; Tate v. Hawkins, 81 Ky. 577, 50 Am. Rep. 181; Ins. Co. v. Brown, 11 Mich. 265; Wiswell v. Baxter, 20 Wis. 680; Whipple v. Barnes, 21 Wis. 332; Lewis v. Schwenn, 93 Mo. 26, 2 S. W. 391, 3 Am. St. Rep. 511; Bush v. White, 85 Mo. 339; Bank v. Guttschlick, 14 Pet. 19-30, 10 L. Ed. 335; Eubanks v. Leveridge, 4 Sawy. 274, Fed. Cas. No. 4544. It has been held that the two causes of action could not even be joined in the absence of a statutory provision to that effect. Ins. Co. v. Brown, 11 Mich. 265; Borden v. Gilbert, 13 Wis. 670; Stilwell v. Kellogg, 14 Wis. 461; Cary v. Wheeler, 14 Wis. 281; Faesi v. Goetz, 15 Wis. 231; Doan v. Holly, 25 Mo. 357, and 26 Mo. 186.

The doctrine established by the foregoing cases is well stated by Judge Deady in Eubanks v. Leveridge. The case was tried in the federal court in Oregon, and, of course, the decision of the Supreme Court of Oregon on the question involved was conclusive on the federal court sitting in that state. The state court had held that an action to foreclose was not barred by the absence of the mortgagor after he parted with the title, because the action was in rem; but Judge Deady reached the same conclusions for reasons different from those of the state court. He said: "But I apprehend the true doctrine to be that the remedy upon the note and mortgage is, like the transaction itself, twofold. The making and delivery of the note, and the failure to pay the same according to its tenor, gives the holder thereof a right of action against the maker,

upon which he can obtain a personal judgment for the sum due thereon. So the execution and delivery of the mortgage creates a lien upon the property included in it to secure the payment of the sum mentioned in the note, and, in case of a default in such payment, a suit may be maintained upon this 'sealed instrument,' the mortgage, to enforce such lien for the purpose of paying the debt. Notwithstanding section 410 of the Code provides that in a suit 'to foreclose a lien, where there is also a personal obligation for the payment of the debt,' in addition to the decree of foreclosure and sale, 'a decree may be given against the person giving the same for the amount thereof,' yet I apprehend that either the remedy upon the personal obligation or the mortgage may be pursued for the collection of the debt without reference to the other.  *   *   * These authorities go to show that the holder of a note and mortgage has two distinct remedies for the collection of his debt, and that they exist and may be pursued independently of each other."

The doctrine recognized and established by these cases has been embodied in our Civil Code, and is expressed by section 4696, Rev. Codes 1899, which declares: "A lien is not extinguished by the mere lapse of time within which, under the provisions of the Code of Civil Procedure, an action can be brought upon the principal obligation." Bearing in mind the proposition established by the foregoing authorities and embodied in our Civil Code by the section just quoted, that the debt and the mortgage give rise to distinct and independent remedies, either of which may be resorted to within the time limited by the statute for each so long as the obligation secured by the mortgage is not extinguished, it seems to us the question is one of easy solution.

The remedy on the personal obligation for the debt and that on the mortgage may, and often must, be pursued against different defendants and in divers jurisdictions. The remedy on the mortgage must be invoked in the jurisdiction where the property lies, and the time within which it must be commenced is governed by the law of that state. The only person or persons affected by that remedy are those who are interested in the property adversely to the mortgage. Those persons are the only necessary parties to such an action. It is against them that the cause of action for the foreclosure of the lien accrues. It is in their favor and for their protection that the statute operates. The acts or situation of the debtor who has no interest in the land clearly should not toll the

statute in an action to which he is not a necessary party. It is clear that it is only he in whose favor and for whose protection the statute operates who can waive or deprive himself of its benefits. Such is the reasoning of the courts of California, Washington, New York, Missouri and South Carolina, and we think those decisions are in accord with both law and common sense. Wood v. Goodfellow, 43 Cal. 185; Watt v. Wright, 66 Cal. 202, 5 Pac. 91; George v. Butler, 26 Wash. 456, 67 Pac. 263, 57 L. R. A. 396, 90 Am. St. Rep. 756; Denny v. Palmer, 26 Wash. 469, 67 Pac. 268, 90 Am. St. Rep. 766; Bush v. White, 85 Mo. 339; Arthur v. Screven (S. C.) 17 S. E. 640; Fowler v. Wood, 78 Hun, 304, 28 N. Y. Supp. 976, affirmed in 150 N. Y. 584, 44 N. E. 1124. See, also, Tate v. Hawkins, 81 Ky. 577, 50 Am. Rep. 181.

Our attention has been called to Prof. Pomeroy's definition of the term "cause of action" in sections 452 et seq. of Pomeroy's Code Remedies, where that author deals with the subject of joinder of causes of action under the Code. It is claimed that the definition there given by Prof. Pomeroy of the term "cause of action" is the only accurate definition of that term, and that it is universal in its application. However interesting a discussion of that subject may be from an academic standpoint, it is unnecessary to indulge in such a discussion in solving the problem presented in this case. The view we take of the question before us does not make it necessary to question or criticize Prof. Pomeroy's definition. It is not the cause of action that is barred by the statute of limitations; it is the remedy for the cause of action that is taken away. This is plainly recognized, and even well illustrated, by some of Prof. Pomeroy's illustrations in section 454 of the work referred to. A contract to convey lands, and defendant's breach, constitute a "cause of action." The single cause of action gives rise to two remedies or actions: First, an action for damages; second, a suit for specific performance. Now, suppose the former were barred in six years and the latter in ten years, it is plain to be seen that the plaintiff having such "cause of action" might be deprived of his action for damages by lapse of time and still maintain specific performance. In other words, the single cause of action gave rise to the right to two remedies or actions; one remedy is barred, but the other remains. The same is true of a mortgage. The nonpayment of the debt is a single cause of action in the sense that term is used by Prof. Pomeroy, but it gives rise to two remedies: First, an action

at law to recover the debt; and, second, a suit in equity to foreclose the mortgage. The former remedy is barred in six years, and the latter is not barred until ten years. It is not claimed by Prof. Pomeroy that the proposition stated by Judge Deady in Eubank v. Leveridge, supra, and the other cases cited in that connection, is not true; nor does the argument of Prof. Pomeroy in any way conflict with the reasoning and the proposition in that case. It may be true that the term "cause of action" is improperly used in this connection by the judges who wrote the opinions in all the cases cited above, but the idea those cases convey to a practical mind is that the non-payment of the debt gives rise to two distinct causes of action—an action on the debt, and a suit to foreclose. These cases also serve to show that the term "cause of action" is commonly used in a sense different from that attached to it by Prof. Pomeroy, the technical accuracy of which we do not care to question.

Section 5106, Rev. Codes 1899, directs that "words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears." And section 5151, Rev. Codes 1899, directs that "words and phrases are to be construed according to the context and approved usage of the language; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or are defined by statute, are to be construed according to such peculiar and appropriate meaning or definition." Section 5147, Rev. Codes 1899, provides that "the provisions of the Code of Civil Procedure and all proceedings under it are to be liberally construed with a view to effect its objects and promote justice." We think that the term "cause of action" as used in the statute of limitations is used, not in the technical sense that Prof. Pomeroy uses it, but the statute uses it in the popular sense of the right to maintain the particular action against which the statute is invoked. It is a matter of common knowledge that such is the common meaning of the term, and that fact is well illustrated by the use of that term in the numerous decisions we have cited. This interpretation of the term serves to promote the object of the statute and further justice and conforms to the requirement "words should be construed in their ordinary sense." Attaching the ordinary meaning to the term "cause of action," it is clear that a cause of action accrues, within the meaning of the statute of limitations, when the holder thereof first obtains the right to re-

sort to that particular form of action for relief.  Ganser v. Ganser, 83 Minn. 199, 86 N. W. 18, 85 Am. St. Rep. 461.

The question, then, is, against whom did the right of foreclosure accrue?  There can be only one answer to that question.  It accrued against the person or persons who were interested in the land adversely to the mortgage.  These are the only necessary parties defendant.  It is their right or title which it is the object of the suit to extinguish by means of a judicial sale, to the end that the proceeds of such sale may be applied to the satisfaction of the debt. Jones on Mortgages (6th Ed.) section 1394 et seq.  It is entirely immaterial whether that person happens to be the mortgagor and debtor, or some third person holding title subject to the mortgage. In either case the obligation created by the mortgage that the debt shall be paid from a sale of the land in a judicial proceeding is equally binding on the fee owner.  The mortgage was a contract with the owner of the fee to the effect that, if the debt was not paid at maturity, then the debt could be collected out of the land by an action against any person who might subsequently  become  the owner.  It was not a contract that the mortgagor would pay, or that he would sell the land and pay, but it was a contract that the land should pay.  It was an obligation which became fastened upon the land itself, and was enforceable against  any  person  who might subsequently become the owner.  Consequently the failure of the personal debtor to pay at maturity gave the mortgagee a right to maintain an action to enforce the obligation which the mortgage fastened on the land.  It manifestly does not lie in his mouth to say that he was not bound to know against whom to commence the action.  He had no right to assume that the mortgagor would forever continue to be the owner of the land.  The mortgage gave him no assurance on that subject.  The statute was notice to the mortgagee that every day's delay in enforcing the mortgage brought him so much nearer to the time when his remedy would be gone. In short, the instant the right to enforce the mortgage arose, that instant the mortgagee was put on inquiry to ascertain against whom the action to enforce it must be brought.  It is incorrect to say that this reasoning foists a new contract on the mortgagee without his consent.  As stated before, his contract in the mortgage was that the land should be answerable for the debt if the personal debtor failed to pay, but the mortgagor did not agree to  continue  his ownership of the land nor to personally sell the land.  He merely

gave the mortgagee a remedy for the collection of the debt from the land by an action to be brought against whomsoever might be the owner when the remedy became available. And the mortgagee's neglect to avail himself of that remedy within the time fixed by the statute is a good defense to the action. Such is the plain language and manifest intent of the statute. Fowler v. Wood, supra. It is also just as clear that it is the intent of the statute that the remedy shall not be barred by the lapse of time in favor of a necessary party defendant who is not within the reach of process, so he can be personally served. Yet the Kansas cases lead to the result that, although the owner of the fee is a necessary party, yet his absence from the state does not toll the statute. Hogaboom v. Flower, 72 Pac. 547.

One more point remains to be noticed. Respondent contends that on the facts of this case it must be presumed that the amount of the mortgage debt was retained by West's grantee from the purchase price for the purpose of satisfying the mortgage, and that the land thereby became the primary fund for the payment of the debt; that the land stood charged with a trust in the hands of West's immediate and remote grantees, including this appellant, for the payment out of the land of the mortgage debt; that this trust was one for the protection of West as well as the plaintiff; and, inasmuch as West is still liable for the debt, and could not plead the statute as a defense in this state, therefore the plea of statute of limitations by this defendant ought not in equity to be permitted. To sustain this contention, the court would have to assume the power to ignore the statute of limitations because in its opinion equity requires it. There are only two things which could stay the running of the statute against this action: Absence of the defendant, or an acknowledgment or new promise within ten years, which new promise or acknowledgment can be proved only by a partial payment or written evidence. In this case neither of these are present, and the court has no power to recognize any exceptions to the statute other than those which the legislature has made. Teigen v. Drake, 13 N. D. 502, 101 N. W. 893. The plaintiff's cause of action accrued in November, 1888, against the Minnesota Thresher Company, and became barred in November, 1898, before this defendant acquired the land.

The judgment is reversed, and the district court is directed to enter judgment in favor of the appellant and against the respondent

for the dismissal of the action and for the taxable costs and disbursements.

YOUNG, J. (dissenting).   I cannot agree to the conclusion which my associates have announced in this case.   In my opinion it is not warranted by the language of section 5210, Rev. Codes 1899, which we all agree applies to this action, and does violence to well-settled legal principles.   Their conclusion, as I view it, rests upon a misconstruction of the governing statute so radical in character that in effect it amounts to a judicial amendment.   It may be true that the results which will follow in this case are desirable, and that the consequences which will follow the adoption of the theory of the majority in future cases, arising upon different facts, involving, as they necessarily will, its future elaboration and application, may be in furtherance of justice.   This, however, even if true, a point which I cannot concede, does not touch the question, for the question of policy of limitations of actions and the extent of the restrictions to be placed upon the right to invoke the various remedies belongs to the legislature and not to the courts, and I take it that the courts are only acting within the limits of their authority and duty when they apply the statutes as they are written without regard to motives of expediency or policy.   All attempts to depart from this rule have properly been received with strong disapprobation.   The courts do not now, unless compelled by the force of former decisions, give a strained construction to evade the effect of these statutes.   McCluny v. Silliman, 3 Pet. (U. S.) 270, 7 L. Ed. 676.   It has been well said that "this is not the epoch when * * * a statute of limitations * * * should be frittered away by judicial refinements and subtle exceptions that never entered into the contemplation of its enlightened framers, and it has for years been a subject of avowed and sincere regret with the most distinguished judges and eminent jurists of the age that any constructive innovations were ever ingrafted upon acts of limitation."   Mr. Justice Livingstone, of the Supreme Court of the United States, said: "It is as much a duty to give effect to laws of this description, with which the courts, however, take great liberties, as to any other which the legislature may be disposed to pass.   When the will of the legislature is clearly expressed, it ought to be followed without regard to consequences, and a construction derived from a consideration of its reason and spirit should never be resorted to but where the expressions are so ambiguous as to render such mode of

interpretation unavoidable." Fisher v. Harnden, 1 Paine, 61, Fed. Cas. No. 4819; Angell on Limitations, section 23. Referring to this subject in McIver v. Ragan, 2 Wheat. 25, 4 L. Ed. 175, Chief Justice Marshall said: "Wherever the situation of a party was such as, in the opinion of the legislature, to furnish a motive for excepting him from the operation of the law, the legislature has made the exception, and it would be going far for this court to add to these exceptions." Likewise Chancellor Kent, in Demarest v. Wynkoop, 3 Johns. Ch. 146, 8 Am. Dec. 467, maintained that "it would be not only impolitic, but contrary to established rule, both in law and equity, to depart from the plain meaning and literal expression of these statutes." Angell on Limitations, section 485, after referring to the authorities, states that "it obviously appears that statutes of limitations are to be strictly construed by courts of justice, and that, although there may have been some instances in which this rule has been departed from, owing to conceptions of inherent equity, they have altogether failed in establishing a contrary precedent."

With this rule of construction for my guidance, I now turn to the merits. The action is to foreclose a real estate mortgage securing the mortgagor's note, which matured November 1, 1888. The mortgagor has been absent from the territory and state since 1887. In that year, and before the note was due, he conveyed the mortgaged premises, subject to the plaintiff's mortgage. In 1901 it was conveyed to defendant, likewise subject to the plaintiff's mortgage. This action was commenced in 1903. The cause of action accrued on November 1, 1888, when the mortgagor made default in meeting his obligation. His default gave the party to whom the obligation was due two remedies for its enforcement: (1) An action at law to recover from the personal assets of the debtor; or (2) an action in equity to enforce payment by a sale of the mortgaged premises, and, through a deficiency judgment, against the debtor, if the land proved insufficient to discharge the obligation. Section 5865, Rev. Codes 1899. The legislature has placed different and definite periods of limitation upon these remedies. The action at law is limited to six years, the foreclosure action is limited to ten years, from the time when the cause of action as to which the remedy is sought accrued. The legislature has also provided for an extension of these periods. The defendant, a foreign corporation, whose title was received subject to the plaintiff's mortgage, and but two years

prior to the commencement of this action, pleads, as its sole defense, the statute of limitations. It will be noted that sufficient time has elapsed since the cause of action accrued against the mortgagor, which was November 1, 1888, to bar both remedies, unless it has been extended by the mortgagor's absence. If the statute was tolled by his absence the action is not barred. The case turns entirely upon section 5210, Rev. Codes 1899, which, so far as material, reads as follows: "If, when the cause of action shall accrue against any person, he shall be out of the state, such action may be commenced within the terms herein respectively limited after the return of such person into the state.  *  *  *  " Some courts have treated foreclosure actions as in rem, and the cause of action as one against the land. From this assumption the conclusion is logical and necessary that the mortgagor's absence does not extend the period of foreclosure; for it is only when the cause of action is against a person, and the person against whom it accrues is absent, that the statute declares that the period is extended. The cases holding that the action is in rem represent the minority view. Anderson v. Baxter, 4 Ore. 105, and the decision of Judge Deady, of the federal district court, in Eubanks v. Leveridge, 4 Sawy. 474, Fed. Cas. No. 4544, an Oregon case in which he followed the conclusion in the case just cited, and Peters v. Dunnels, 5 Neb. 460, are of this class. The decided weight of authority is the other way. As stated in the majority opinion, "we are agreed that this action is not in rem," and "we are of the opinion that the absence from the state of a person against whom the cause of action accrued stays the running of the statute of limitations against an action to foreclose a mortgage, the same as in any other action in personam." In other words, section 5210, supra, which extends the time for commencing an action when the person against whom the cause of action accrues is absent from the state applies to this action.

It is apparent, then, that the decisive question is this, against whom did the cause of action in this case accrue? for it is the fact of the absence of the person against whom "the cause of action shall accrue" which this statute declares shall extend the period for commencing the action. It is in answering this question that I am compelled to part company with my associates. My answer is that it is the absence of the obligor, Fred West, the person who executed the note and mortgage, the person whose obligation this action is brought to enforce, and the only person who, upon this

record, owes any obligation, contractual or otherwise, to the plaintiff. In my view, the question involves no difficulty, and, if it were not for the views of my associates, I would not consider it fairly debatable. There is no controversy as to the facts, and there is no ambiguity in the language of the statute, and no obscurity or uncertainty as to the meaning of the phrase "cause of action." The statute makes the general declaration applicable to all actions that the absence of the person against whom the "cause of action shall accrue" shall extend the period for commencing the action. This declaration, applied in the light of the legal meaning of the phrase "cause of action"—and I do not understand that it has any other meaning—will designate with certainty in every action the persons whose absence tolls the statute, i. e., the debtor or person whose obligation is being enforced. The phrase "cause of action" was coined early in the history of English jurisprudence. It is a phrase peculiar to the language of the law and the courts. It was employed in the acts of parliament from an early day (see statute 21, James I, c. 16, entitled "An act for the limitation of action," etc.), and it has been a familiar phrase in the statutes of this country from its earliest history. While it is true the language of the courts and text-writers in defining it has not always been uniform, yet it may be safely stated that in every instance in which its elements were under discussion it has been held to include as one of its essential and constituent elements an obligation, or legal duty, an obligation or duty resting upon the person against whom the cause of action exists. The cause of action accrues in favor of the person to whom the obligation or duty is due, and it accrues against the person who owes the obligation or duty, and arises upon the latter's default. The following analysis by Prof. Pomeroy in his Code Remedies, section 453, has been generally approved by the courts and text-writers, and, so far as I know, as to its essential elements it has never been criticized: "Every judicial action must involve the following elements: A primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant, which consists in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting upon the defendant, springing from this delict; and finally, the remedy or relief itself. Every action, however complicated or however simple, must contain these essential elements. Of these elements, the primary

right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the Codes of the several states. They are the legal cause or foundation whence the right of action springs." Section 459. "The different reliefs which the plaintiff seeks to obtain do not constitute different causes of action." Other courts and text-writers have defined it as follows: Veeder v. Baker, 83 N. Y. 161. "It may be said to be composed of the right of the plaintiff, and the obligation, duty or wrong of the defendant, and these combined, it is sufficiently accurate to say, constitute the cause of action." Wildman v. Wildman, 70 Conn. 700, 41 Atl. 1; Goodrich v. Alfred, 72 Conn. 260, 43 Atl. 1041. "Stated in brief, a cause of action may be said to consist of a right belonging to the plaintiff, and some wrong or omission done by the defendant by which that right has been violated." Kennerty v. The E. P. Co., 21 S. C. 226, 53 Am. Rep. 671. "A cause of action, defined in a few words, is a primary right of one, either legal or equitable, invaded by another." Dicey on Parties to Actions, p. 8. "A cause of action; i. e., a right on the part of one person, combined with a violation of or infringement upon such right by another." Maxwell on Code Pleading, 97. "(1) A primary right of plaintiff, and a wrong done by defendant in respect to such right." Phillips on Code Pleading, section 32. "A primary right and its corresponding duties, and (2) the infringement of this right by a party owing this duty." See also sections 29 to 33, inclusive. 1 Estee's Pleadings, section 128. "A right on the part of one person, the plaintiff, combined with a violation or infringement of that right by another person, the defendant." 2 Words and Phrases, 1115. "A cause of action may be said to consist of the right belonging to the plaintiff and some wrongful act or omission done by the defendant by which that right has been violated." Note numerous cases cited. Emory v. Hazard Powder Co., 22 S. C. 476, 53 Am. Rep. 730, 732. "Causes of action are very often confounded with remedies, and, being regarded as synonymous, the rules established with reference to the one are sometimes supposed to be applicable to the other. This, however, is a mistaken view of the subject, as a brief investigation will show. A cause of action may be defined in general terms to be a legal right, invaded without justification or sufficient excuse. Upon such invasion a cause of action arises, which entitles the party injured to some relief by the application of such remedies as the laws may afford. But the

cause of action and the remedy sought are entirely different matters. The one precedes, and, it is true, gives rise to the other, but they are separate and distinct from each other, and are governed by different rules and principles." See, also, Andrews' Am. Law, sections 1063, 1064; Armes Co. v. Railway Co., 7 Yale Law Review, 245, also found on page 1153, Appendix Andrews' Am. Law; Frost v. Witter (Cal.) 64 Pac. 705, 84 Am. St. Rep. 53; Fields v. Daisy Gold Mining Co. (Utah) 73 Pac. 521; Bank v. Dickinson, 6 N. D. 222, 235, 239, 69 N. W. 455, 49 L. R. A. 285; Von Campe v. City of Chicago (Ill. Sup.) 29 N. E. 892. It is manifest that the cause of action which gave rise to the remedy now being invoked accrued against Webb, the debtor and mortgagor, and against no one else. It was his debt, and it is secured by his mortgage. He alone executed the mortgage, and it was upon his own property. No one else has agreed to pay the debt; no one else signed the mortgage; no one else has assumed any contractual relations with the plaintiff either as to the note or mortgage. It was his default, and his alone, which gave rise to the plaintiff's cause of action. The several grantees took their title with constructive notice of the mortgage, and expressly subject to it. They did not obligate themselves to pay the debt. They therefore owed the plaintiff no duty. They have made no default, and as between them and the plaintiff there has been no concurrence of right, duty and default which would give rise to a cause of action against them. Had they assumed the mortgage and agreed to pay the debt, or had they given the mortgage upon their own property to secure West's debt, a cause of action would have arisen against them in plaintiff's favor, and the statute would, as to that cause of action, run in their favor as to all remedies to enforce it. Daniels v. Johnson, 129 Cal. 419, 61 Pac. 1107, 79 Am. St. Rep. 123; Farmers' National Bank v. Gates, 33 Ore. 388, 54 Pac. 205, 72 Am. St. Rep. 724; Fowler v. Wood, 78 Hun (N. Y.) 304, 28 N. Y. Supp. 976. But we have no such case here. The grantees have assumed no liability, and have made no default. The remedy invoked against the defendant is upon the cause of action against the mortgagor and debtor upon his debt, and his mortgage, and rests upon his default, and not upon any default of his grantee. The "cause of action" accrued against him. He has been absent from the state. The statute declares that in that event the time for commencing the action is extended. This action was therefore brought within the statutory

period. This conclusion, to my mind, cannot be avoided if the statute be given effect. The majority opinion does not meet the question with directness, if at all; and I am therefore in some doubt as to the exact ground upon which they really rest their conclusion. If they mean that "the cause of action" does in fact accrue against a grantee who takes expressly subject to the mortgage, I disagree with them as to the fact. If they mean that the period of time for commencing an action depends upon the presence or absence of "parties," I answer that the statute does not so provide, for it only extends the period upon the absence of the obligor or obligors— the person or persons against whom "the cause of action accrues." In some instances the necessary party or parties defendant may be the same person or persons whose obligation is being enforced. In this case that is not true, and this is frequently the case in equity actions, especially in foreclosure actions in which subsequent purchasers and incumbrancers are made defendants. So far as this conclusion is based upon the ground that the phrase "cause of action" has a different and "popular" meaning, and that the "popular" meaning should be ascribed to it so that the statute may include "necessary parties" instead of merely obligors, it rests, as has been previously pointed out, upon an unwarranted assumption. This is the first instance in which this statute has been before this court. Neither this court nor any other court, so far as I can learn, has ever held that the phrase "cause of action" as used in this statute has any other than its legal meaning, and I cannot assent to its amendment by judicial construction. Neither do I agree that courts can avoid giving effect to a statute which is written in plain terms upon the ground that it would be in "furtherance of justice" to do so. The legislature having declared the law, it is our duty to apply it as it is written.

The majority hold that the action to foreclose the mortgage is barred. In defense of this conclusion they state, and it is a correct statement, for the statute so provides, "that the remedy against the debtor on his personal liability may be barred by lapse of time and yet the remedy upon the mortgage remain available." Following this, they state that "it is likewise apparent that the converse is true—the remedy for the enforcement of the mortgage may be barred though the action at law against the debtor is still maintainable." The converse is not true in this state, for the legislature has fixed a longer period for commencing the foreclosure

action than for the action at law. The statement is specious, but unsound. If the legislature had fixed the same period for both actions, the bar would fall as to both at the same time. If it had reversed the periods and fixed six years for the foreclosure action and ten years for the action at law, the remedy by foreclosure would of course be lost before the action at law was barred. But this is not our statute. On the contrary, it preserves the remedy by foreclosure for ten years and the remedy at law for only six years. In short, the statute itself preserves the remedy by foreclosure after the action at law is barred, which is directly contrary to the conclusions reached by my associates. It is true, a number of courts have held that the absence of the mortgagor from the state will not extend the period for commencing a foreclosure action as against a resident grantee, but I am free to confess that I am unable to find in the opinions in these cases any satisfactory reason for that conclusion. They will be found to rest either upon an erroneous assumption of fact, or upon the courts' views as to what the law ought to be. The reasons advanced are noted for their lack of harmony, and it is evident that they do not appeal to my associates, for they apparently are unwilling to rest their conclusion upon the grounds stated by any court which reached a like result. It will be found upon an examination of these cases that the grounds stated by the majority in this case are in some respects without precedent. This is particularly true as to the new meaning ascribed to the phrase "cause of action."

In the following cases a statute like our own was applied to foreclosure actions, and the question under consideration was directly involved. In Waterson v. Kirkwood, 17 Kan. 9, the grantees of one Pearsoll, the absent mortgagor, pleaded the statute of limitations. Their plea was overruled. The court said: "They have merely succeeded to the rights of Pearsoll; they stand in his shoes; they have nothing more than he at any time had the right to transfer them. The stream has not and cannot rise higher than the fountain, nor can they, by the purchase of Pearsoll's interest in the land, cast additional burdens and inconvenience upon the holder of the mortgage. And therefore, as Pearsoll had never obtained or had the right to plead the statute of limitations, the grantees   *   *   * have no such right." See, also, opinion of Judge Brewer in Schmucker v. Seibert, 18 Kan. 104, 26 Am. Rep. 765. In Clinton County v. Cox, 37 Iowa, 570, the plea of the resident grantee of one Cox,

the absent mortgagor, was overruled, against the contention which is made in this case—that because the action could have been brought before the ten-year period expired, notwithstanding the mortgagor's absence, the action was therefore barred—with the cogent statement that "the law does not so provide." This conclusion was again announced in Robertson v. Stuhlmiller, 93 Iowa, 326, 61 N. W. 986, upon a like state of facts. The court said: "The obligation to Stuhlmiller [the mortgagor] is valid, and the lien of the mortgage is still in force. * * * The interest of the grantee is junior to the lien of the mortgage, * * * because the title he acquired is subject to the mortgage." These decisions were rendered by a united court, and this was true in Leeds Lumber Co. v. Haworth, 98 Iowa, 463, 67 N. W. 383, 60 Am. St. Rep. 199, in which the same court held that "an action to foreclose a mechanic's lien which was not barred by limitation against the principal debtor because of his removal from the state before the statute had fully run was not barred as to other lienors who have been residents of the state during the entire period." The question also arose in Minnesota in Whaley v. Eldridge, 24 Minn. 358. It was contended by a subsequent grantee that the statute had run notwithstanding the mortgagor's absence from the state, upon the theory that the action was in rem, and that the statutory exception for absence was not applicable; citing in support of this view Anderson v. Baxter, 4 Ore. 105, and Eubanks v| Leveridge, 4 Sawy. 274, Fed. Cas. No. 4544. This the court denied, and held that the time had been extended. It is true, it appears in the statement of facts prefixed to the opinion, that the mortgagor's immediate grantee was also absent. That fact, however, was not adverted to in the briefs of counsel or in the opinion of the court, and plainly was not considered of any legal significance. As to the effect accorded to this decision, see Bush v. White, 85 Mo. 361, and 2 Pingree on Mortgages, section 1572. The courts of Illinois, applying a statute like our own, have held against the conclusions of my associates in a series of cases. In Banking Association v. Bank, 157 Ill. 524-536, 41 N. E. 919, it was argued on behalf of one who held under a sheriff's deed that, inasmuch as the mortgage might have been foreclosed notwithstanding the mortgagor's absence, no reason remained why the statutory exception for absence should apply or the time of the mortgagor's absence be deducted. This was answered in the following language: "As the case comes within the express language

of the exception, we cannot assume the province of the legislature and say that the exceptions are not to apply." Again, in Richey v. Sinclair, 167 Ill. 184, 47 N. E. 364, it was held in a foreclosure action that "the time of the mortgagor's absence from the state after the right of action accrued on the debt cannot be reckoned as a part of the time limited for the commencement of the foreclosure proceedings against his grantee, though he is not a party to the suit;" basing its conclusion upon a previous case, Emory v. Keighan, 94 Ill. 543, in which it had held, in harmony with the almost unanimous voice of authority, that "the rights of one holding under a mortgage of real estate may be affected by the fact that the payment of interest or payment of a part of the mortgage debt by the mortgagor after maturity and before the statute of limitations had run, though he may not be a party to either;" and stating that, "upon the same principle and for a like reason, the grantee of the mortgagor will be affected by the fact that the mortgagor had gone out of the state and thus arrested the running of the statute of limitations. The holding has been uniform in this state." This construction of the statute was also followed in Falwell v. Hening, 78 Tex. 278, 14 S. W. 613, in which it was held that the absence from the state of the maker of a vendor's lien suspends the statute as well against the lien as against the indebtedness, and that a purchaser from the vendee or mortgagor could not avoid the lien by limitation while the debt and lien are valid against the original vendee. See, also, Jones v. Foster, 175 Ill. 459, 51 N. E. 862; Emory v. Keighan, 94 Ill. 543; Von Campe v. Chicago, 140 Ill. 361, 370, 29 N. E. 892, is to the same effect, and more to the point relied upon by my associates, in that it holds that "grantees are not the persons against whom the cause of action accrues within the meaning of section 18" (our section 5210, supra). Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 28 L. Ed. 682, is in point upon the principle upon which the foregoing case rests, aside from their adherence to the governing statute. That was a foreclosure action, wherein a grantee of the mortgagor, as in this action, relied upon the statute of limitations. James B. Ewell and his wife gave a note to Daggs, secured by a mortgage upon land which in equity belonged to George W. Ewell, a brother. Later, James B. Ewell transferred the land back to his brother, George, the latter having no knowledge of the existence of the mortgage. George pleaded the statute of limitations. Mr. Justice Matthews, speak-

ing for the court, said: "There is no force in the suggestion that, although the defense of the statute of limitations would not avail Jas. B. Ewell, * * * it, nevertheless, is a protection to Geo. W. Ewell, because * * * the suit now pending was not brought till after the time limited for an action to recover the debt. For the present suit is not to recover the debt, nor is it a suit against Geo. B. Ewell. He is a party defendant, because he has an interest by a subsequent conveyance in the lands sought to be sold under the mortgage. He has an equity of redemption, which entitles him to prevent a foreclosure and sale by payment of the mortgage debt; but the debt he has to pay is not his own, but that of Jas. B. Ewell. If he can show that debt no longer exists because it has been barred by the statute of limitations, he is entitled to do so; but he must do it by showing that it is barred as between the parties to it. If not, the land is still subject to the pledge, because the condition has not been performed. It is not to the purpose for the appellant to show that he owes the debt no longer, for in fact he never owed it at all; but his land is subject to its payment as long as it exists as a debt against the mortgagor, for that was its condition when his title accrued." Mr. Justice Washington in Hughes v. Edwards, 9 Wheat. (U. S.) 489, 6 L. Ed. 142, sets forth the legal relation existing between a purchaser and the holder of a prior mortgage as to this question in the following language: "A purchaser, with notice, can be in no better situation than the person from whom he derives the title, and is bound by the same equity which would affect his rights. The mortgagor, after forfeiture, has no title at law, and none in equity, but to redeem upon the terms of paying the debt and interest. His conveyance to a purchaser with notice passes nothing but an equity of redemption, and the latter can, no more than the mortgagor, assert that equity against the mortgagee without paying the debt, or showing that it has been paid or released, or that there are circumstances in the case sufficient to warrant the presumption of those facts, or one of them." See also, upon the same principle, it was held in Murdock v. Waterman, 145 N. Y. 55, 39 N. E. 829, 27 L. R. A. 418, that "a partial payment by a mortgagor of the debt, even after he had conveyed the premises mortgaged, would continue the lien of the mortgage. * * * The mortgage is an incident to the debt, and, when payments are made by the debtor, the mortgagee is not called upon to inquire how the mortgagor has dealt with

the equity of redemption. If the mortgage is recorded, the purchaser has constructive notice of its existence, and a dealing with the debt between the debtor and creditor in the usual course is to be expected. The mortgagors, until at least the debt is barred, represent all persons interested in the land." This is indeed so well settled that it is now seldom questioned. See N. Y. Life Ins. Co. v. Covert, 6 Abb. Prac. (N. S.) 154; Kendall v. Tracey, 64 Vt. 522, 24 Atl. 1118; Sanger v. Nightingale, 122 U. S. 176, 7 Sup. Ct. 1109, 30 L. Ed. 1106; and Hanchett v. Blair, 100 Fed. 817, 41 C. C. A. 76, and cases cited on page 825 of 100 U. S., page 84 of 41 C. C. A. "The general if not universal rule is that a partial payment or an acknowledgment of a debt which would prevent the statute from running against it will also prevent the statute from running against the remedy on the security." Carson v. Cochran, 52 Minn. 67, 53 N. W. 1130. See, also, Wiltsee on Mortgages, section 65; 2 Jones on Mortgages, section 1214b, 1201, 1202; 2 Pingree on Mortgages, sections 1570, 1572.

I will now refer to the cases cited in support of the conclusion that the absence of the mortgagor does not toll the statute. We are agreed that Anderson v. Baxter, 4 Ore. 105, and Peters v. Dunnells, 5 Neb. 460, which hold that the action is in rem, are unsound, and furnish no precedent for the construction or application of this statute. Tate v. Hawkins, 81 Ky. 577, 50 Am. Rep. 181, does not touch the question of absence, or the effect to be given to the statute involved in this case. Fowler v. Wood, 78 Hun. 304, 28 N. Y. Supp. 976, affirmed without opinion in 150 N. Y. 584, 44 N. E. 1124, is in its facts wholly unlike the case at bar. It was not a case like this, in which the grantee of an absent mortgagor pleads the statute. The mortgagor had mortgaged her own property to secure the debt of another. The plea of the statute was interposed by the mortgagor, and she had resided in the state for the full period. The court held that the absence of the maker of the note, to secure which she had mortgaged her individual property, did not toll the statute as to the action to foreclose her mortgage, and upon the ground that she was the obligor and that it was her obligation which was being enforced, a position which is in entire accord with the cases previously cited, and in my view, a correct application of the statute. In Bush v. White, 85 Mo. 339, an ejectment action, the court apparently was of the opinion that the mortgagor's absence would toll the statute if he still held the title, but held that his

absence would not toll the statute after he had parted with his title. This conclusion rests upon the following statement: "If the mortgagor's absence happens after he has parted with his estate, the reasons for deducting his absence, so far as any proceeding against the land is concerned, are wanting. He has ceased to be a necessary party to such proceeding as it rests in the ordinary process of suits. His assigns and the owner of the land is a necessary party to the ordinary process of law for the purpose of foreclosing the mortgage, and the debtor is not a necessary party." The reason upon which this case rests is directly opposed to that stated in Lackland v. Smith, 5 Mo. App. 153, an action in equity against one Garesche, the resident holder of the legal title upon a cause of action against Smith. It was argued that the action might have been commenced at any time by personal service on Garesche and publication against Smith. The court said: "It seems to be a sufficient answer to this objection to say that a cause of action accrued against Smith, and that the statute is express that in every such case the time of absence from the state shall be counted out. Wag. St. p. 919, section 16. The fact that one has left property in the state, subject to attachment, does not keep the statute running. Hancock v. Heugh, 1 Mo. 678. And, because plaintiff might have brought suit by publication, it does not follow that he was guilty of laches in not doing so. Fisher v. Fisher, 43 Miss. 212. Process of law could not be served on Smith, and, whilst this was so, the statute was arrested as to any cause of action accruing against him." In Arthur v. Screven (S. C.) 17 S. E. 640, a foreclosure action, the grantee of a mortgagor stood upon two defenses: (1) That he was an innocent purchaser; and (2) upon the statute of limitations. The court, after sustaining the first defense, also held that the plea of the statute was good, stating that "the provisions of the section relating to absence relate only to absentees, and have no reference whatever to any person who may be liable to a suit even upon the same cause of action accruing at the same time; otherwise, if two persons should sign a joint and several promissory note, and one of them should leave the state and never return, the other could never plead the statute of limitations to an action on their breach of contract evidenced by the note." In Wood v. Goodfellow, 43 Cal. 185, two of the three members of which that court was then composed, the chief justice dissenting, held, upon a plea interposed by the resident grantee, that the mortgagor's absence did not pre-

vent the running of the statute. The ground of their decision is contained in the following quotation: "When the mortgagor has parted with his title to the property and ceases to have any interest therein, those who have succeeded to his rights stand in the same relation to the mortgage as if they had originally made the mortgage on their own property to secure the debt of the mortgagor. The mortgagor has no interest in the property, nor are they under obligation to pay his debt. Their property, however, is bound as collateral security for its payment under the mortgage, which is a contract in writing by which the property is pledged as security for the debt." The court said that the argument that the grantee's absence extended the period would be impregnable, "if it were conceded that the grantee who has succeeded to and now holds the equity of redemption of the mortgagor occupied precisely his status under the statute." In reaching its conclusion, the majority assumed that the relation of the grantee to the mortgagee was the same as one who mortgages his own property to secure the debt of another, and, in fact, used that illustration to elucidate and fortify its conclusions. This case was presented to the Supreme Court of Kansas in Waterson v. Kirkwood, 17 Kan. 9, when the question was new in that state, and that court declared that this "decision is not good law in Kansas," and, in my view, it should not be held good law in North Dakota. In George v. Butler, 26 Wash. 456, 67 Pac. 263, 57 L. R. A. 396, 90 Am. St. Rep. 756, the Supreme Court of that state adopted the doctrine of Wood v. Goodfellow, supra, from which it quoted at length, the case which was repudiated by the Supreme Court of Kansas. In Denny v. Palmer, 26 Wash. 469, 67 Pac. 268, 90 Am. St. Rep. 766, the court restricted the scope of the decision just cited to some extent by holding that notice of some kind to the mortgagee of the transfer is necessary, and denied the right of a resident grantee to plead the statute, upon the ground that he was estopped by his failure to record his deed. The court said: "It appears that respondent did not know that he had a cause of action against appellant prior to the time the deed was recorded. He knew he held a cause of action against the mortgagor as to which the statute of limitations had not run because of the mortgagor's absence from the state, but he could not, under any principle of reason and justice, be chargeable with notice that appellant had any interest in the land, unless appellant's deed had been of record, or some actual

knowledge of its existence been brought home to him or his assigns." In the later case of De Voe v. Rundle, 33 Wash. 604, 611, 74 Pac. 836, that court evidenced some misgivings as to the correctness of the rule it had adopted, and, after conceding that a conflict of authority existed, stated that, inasmuch as it had previously adopted the California rule, it should be followed, "thus preserving the harmonious application of the principle heretofore adopted in a former decision." That the conclusion in each of the cases referred to is grounded either upon error of law or of fact is manifest. The Missouri case rests not upon statute, but upon the ground of expediency and the court's individual reasons why it should not apply to grantees; the South Carolina case to some extent rests upon the same reason, but also upon the erroneous assumption that the grantee and mortgagor are in legal effect joint obligors. The California court, followed by the Washington court, fell into substantially the same error in assuming that the grantee's legal relation to the mortgage is the same as that of one who mortgages his own property to secure the debt of another. If the assumption in the cases last referred to were correct, the conclusion would not be subject to criticism, for in that event the grantee, as an obligor, would be, within the statute, a person against whom "the cause of action accrued." That "the cause of action" is not against him, and that the obligation being enforced is not his, but that of the mortgagor, has already been pointed out. The errors in these cases should not be perpetuated by our approval, and I cannot assent to an alteration of the meaning of the statute to cure them. Neither can I assent to the doctrine laid down by my associates as to the duties of mortgagees. This doctrine requires that mortgagees shall know, and at their peril must know, at all times after the mortgagor's default, and during the entire ten years in which the right to foreclose is optional, what persons, if any, have acquired subsequent and subordinate interests in the mortgaged premises by purchase or otherwise, and whether such persons, or any of them, are residing within the state or are absent therefrom, and, if absent, the date of departure of each and the date of their return. Under the rule laid down by the majority, a mortgagee whose mortgage is duly recorded may not rely upon the notice of the character and extent of his interest which is imparted under the recording act to those who subsequently acquire interests in the mortgaged premises as a full performance of his duty.

This doctrine, in my opinion, nullifies the effect of the recording laws; i. e., that an instrument duly recorded imparts notice to subsequent purchasers and incumbrancers—that such persons are bound to know of prior transfers—and reverses the obligation in this: That it requires that prior incumbrancers shall be bound to a knowledge of subsequent transfers. It not only exacts instant knowledge of the fact of subsequent transfers, but also of the names and places of residence of the persons acquiring such subsequent interests—persons with whom the mortgagee has no contractual relations, who owe him no obligation, and of whose very existence he may be, and often is, entirely ignorant. I know of no legal principle or statute upon which this rule may rest. As an arbitrary rule of duty, it will in many cases require the impossible. If it is meant to bind mortgagees to this knowledge only when the subsequent conveyances are placed of record, it is clear that the rule is unsound, for: (1) "The registration of a deed given by a mortgagor subsequent to the mortgage is no notice of such conveyance to the mortgagee. The latter is under no obligation to search for such conveyance." N. Y. Life Ins. Co. v. Covert (N. Y.) 6 Abb. Prac. (N. S.) 154, 171; Webb on Record Title, sections 4, 152. And (2) even if the recording of a subsequent transfer could be said to impart notice to the holders of prior transfers which are of record (a point which will not be admitted), it cannot be claimed that it imparts continuous notice of the place of residence, and changes in places of residence, of the holders of such subsequent interests. (Since the opinion in this case was filed, the majority of the court have held, in the companion case of Paine v. Dodds, 103 N. W. 931, that the statute will run only from the date of the filing of the deed for record.)

It is well settled, I think, that the mortgagee has done his full duty when he records his mortgage, and in this manner announces to all persons who may subsequently deal with the premises the extent of his interest. He may then remain silent. Dick v. Balch, 8 Pet. (U. S.) 30, 8 L. Ed. 856. And no negligence can be imputed to him for so doing. No restriction is placed upon his right to foreclose so long as he exercises it within the statutory period, and he is not chargeable with negligence because he elects to delay the enforcement of his security. Heretofore it has not been counted a fault for a creditor to indulge his debtor, but rather an

act of grace and favor, to be met with commendation rather than punishment.

It is not necessary to make the subsequent grantees or lienholders parties to the action, unless at the time the action is commenced (and that may always be just prior to the expiration of the ten-year period) their conveyances and liens are then of record. He is not required to consult the records until that time, and then only for the purpose of ascertaining the names of the persons who have acquired interests subsequent to his mortgage, in order to join them as defendants. Section 5231, Rev. Codes, reads as follows: "In an action to foreclose a mortgage or other lien upon real property, no person holding a conveyance from or under the mortgagor of the property mortgaged or other owner thereof, or having a lien upon such property, which conveyance or lien does not appear of record in the proper office at the time of the commencement of the action, need be made a party to such action; and the judgment therein rendered and the proceedings therein had are as conclusive against the party holding such unrecorded conveyance or lien as if he had been made a party to the action."

The rule laid down by the majority establishes different periods of limitation in the same action, and upon the plea of those who are merely parties to the action, which will be determined by the fact of their presence in or absence from the state and the length of their absence, instead of one period fixed by the presence or absence of the person whose obligation is being enforced and against whom the cause of action accures; and, if I am correct in my views, it announces a new rule of property, the effect of which is to transfer interests and rights in real estate which have become vested. I cannot, therefore, consent to the adoption of this doctrine without protest.

From my standpoint, the question as to the right of a foreign corporation to plead the statute is not vital, and I therefore express no opinion upon that point.

The judgment of the trial court, in my view, is proper, and should be affirmed.